Joshua Jordan, admitted Pro Se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com



## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE (WILMINGTON)

| | |
|---|---|
| In re: | Chapter 7 |
| Prehired, LLC, et al, | BK Case No.: 1:22-bk-11007 |
| Debtors | District Case No.: 1:24-cv-01181 |
| **JOSHUA JORDAN,** Appellant, | Re: D.I. 222, 228, 230 |
| v. | |
| **STATE OF WASHINGTON,** Appellee. | **APPELLANT'S OPENING BRIEF** |

**Certificate of Interested Persons and Corporate Disclosure Statement (CIP)**

The undersigned, counsel of record for Joshua Jordan (Pro Se Appellant), certifies that

the following persons and entities have an interest in the outcome of this case:

1. Joshua Jordan, Appellant, pro se Intervenor ("Jordan")

2. State of Washington, Appellee Counsel (the "State"):

   SUSANA CROKE, MADELINE S. DAVIS, AND JULIA K. DOYLE

   Assistant Attorneys General, Attorneys for State of Washington

800 Fifth Avenue, Suite 2000, Seattle, WA 98104, (206) 464-7744

susana.croke@atg.wa.gov, maddie.davis@atg.wa.gov, julie.doyle@atg.wa.gov

3. Don A. Beskrone, Chapter 7 Trustee ("Beskrone", collectively with Palacio, "Trustee"), Interested Party Counsel for Prehired, LLC ("Debtor"):  Counsel:

  Ricardo Palacio ("Palacio", collectively with Beskrone,"Trustee")

  Ashby & Geddes, P.A.

  500 Delaware Avenue, 8th Floor, Wilmington, DE 19801

  rpalacio@ashbygeddes.com | 302-654-1888

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that the issues presented in this appeal are clearly and comprehensively addressed within the brief and therefore respectfully submits that oral argument is not necessary for the resolution of this case.

## TABLE OF CONTENTS

CIP STATEMENT.................................................................................................. 1

STATEMENT REGARDING ORAL ARGUMENT................................................... 2

JURISDICTIONAL STATEMENT.......................................................................... 9

STATEMENT OF THE ISSUES.........................................................................10

STATEMENT OF THE CASE............................................................................... 12

 A. Nature of the Case.................................................................................. 12

B. Procedural History......................................................................13

C. The Settlement Order and Release..........................................14

D. The Bankruptcy Court's Ruling................................................15

STATEMENT OF FACTS...................................................................16

STANDARD OF REVIEW..................................................................20

SUMMARY OF THE ARGUMENT.....................................................21

ARGUMENT......................................................................................22

I. THE BANKRUPTCY COURT ERRED IN ITS INTERPRETATION

OF "ASSIGNS"...............................................................................22

    A. The Plain Meaning Rule Requires Enforcement of Clear Contract Terms....22

    B. Contra Proferentem Requires Construing Ambiguities Against the State......28

II. THE BANKRUPTCY COURT'S PROCEDURAL RULING CONFLICTS WITH ITS

MERITS DETERMINATION ..........................................................34

    A. The Court's Procedural Ruling ..........................................35

    B. The Court's Substantive Determinations ..........................35

    C. Enhanced Analysis of Contract Interpretation....................35

    D. The Legal Error in This Approach ....................................37

III. THE BANKRUPTCY COURT'S INTERPRETATION CREATES A STRUCTURAL

CONSTITUTIONAL VIOLATION THAT THREATENS FEDERAL JUDICIAL

INTEGRITY ...................................................................................38

    A. The Foundational Constitutional Violation.........................38

B. Full Faith and Credit ….............................................................. 41

C. Fundamental Threat to Judicial Integrity and Institutional Coherence……..49

D. Bankruptcy Court's Authority to Enforce Its Own Orders …......................52

E. The Court Created a Structural Constitutional Violation …...........................53

IV. PUBLIC POLICY CONSIDERATIONS SUPPORT REVERSAL …………....56

A. Finality of Bankruptcy Settlements ……………..…….……......………..……56

B. Enhanced Analysis of Double Recovery ……....……....……....………..…… 58

C. Double Recovery Issues …....……....……....…….....……....………..………59

V. THE VOIDING OF ISAS CREATES LEGAL IMPOSSIBILITY …………….60

A. Legal Framework for Void Ab Initio Doctrine ….................................60

B. Impact on State Court Judgment ….................................................61

VI. JUDICIAL ESTOPPEL AND EQUITABLE PRINCIPLES …......................64

A. Elements of Judicial Estoppel ….................................................64

B. The State's Inconsistent Positions in Detail ….......................................66

VII. BANKRUPTCY COURT'S JURISDICTION AND AUTHORITY …............. 67

A. Statutory Framework for Enforcement…...…….........................................67

B. Constitutional Authority ….......…….................................................. 69

VIII. REMEDIES AND RELIEF …....……....………...................................... 70

A. Authority for Requested Relief …...……....……....……................................70

B. Interpretation Requested …....……....……....…….....……....………..……71

C. Impact of Requested Interpretation …...……....……....……...………..……72

D. Prayer for Relief ...…………………….………………… …………………... 73

## TABLE OF AUTHORITIES

**Supreme Court Cases:**

Baker v. General Motors Corp., 522 U.S. 222 (1998)......................39,41-42,46-47,49,54

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998) .........................................59

Colautti v. Franklin, 439 U.S. 379 (1979) ...................................................... 24

Davis v. Wakelee, 156 U.S. 680 (1895)............................................................33

Ex parte Rowland, 104 U.S. 604 (1881) .........................................................63

Hawaii v. Standard Oil Co., 405 U.S. 251 (1972) ........................................... 59

Local Loan Co. v. Hunt, 292 U.S. 234 (1934) ........................................... 70

Meese v. Keene, 481 U.S. 465 (1987) ........................................................ 24

New Hampshire v. Maine, 532 U.S. 742 (2001)...................................................29-30,64-65

Norton v. Shelby County, 118 U.S. 425 (1886) .........................................50,53,60-63

Spallone v. United States, 493 U.S. 265 (1990) ........................................... 71

Stern v. Marshall, 564 U.S. 462 (2011) .......................................................... 69

Travelers Indemnity Co. v. Bailey, 557 U.S. 137 (2009)........................39,41,42,46-51,55

University of Tennessee v. Elliott, 478 U.S. 788 (1986) ...................................46,52,56

Williams v. North Carolina, 325 U.S. 226 (1945) ......................................... 62

**Circuit Court Cases:**

Alvin Ltd. v. U.S. Postal Service, 816 F.2d 1562 (Fed. Cir. 1987)...............................61-62

In re Cendant Corp. Prides Litig., In re, 234 F.3d 166 (3d Cir. 2000)..........................10

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)....................21,22,28

In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000) ...........................................45,70

In re Global Industrial Technologies, 645 F.3d 201 (3d Cir. 2011) ..................41-48,51,55

In re Kane, 628 F.3d 631 (3d Cir. 2010) ..........................................................66

In re Klaas, 858 F.3d 820 (3d Cir. 2017)..........................................................21

In re Lazy Days' RV Center Inc., 724 F.3d 418 (3d Cir. 2013)..........................9,38,53,70

In re Martin, 91 F.3d 389 (3d Cir. 1996) ........................................................49,58,70

In re Montgomery Ward Holding Corp., 326 F.3d 383 (3d Cir. 2003).....20-22,27,40,52,60

In re Philadelphia Newspapers, LLC, 599 F.3d 298 (3d Cir. 2010)...........................23,28

In re Prosser, 777 F.3d 154 (3d Cir. 2015)........................................................20

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000).....................23,27,40,45,50,56,57

In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004)....................................................70

In re Tribune Co., 972 F.3d 228 (3d Cir. 2020)....................................................21,27,37

In re Truong, 513 F.3d 91 (3d Cir. 2008).................................................................9

Montrose Medical Group v. Bulger, 243 F.3d 773 (3d Cir. 2001) ................................66

Ryan Operations G.P. v. Santiam-Midwest Lumber Co, 81 F.3d 355

(3d Cir. 1996)..................................................................................31,34,66

**Bankruptcy Court Cases:**

In re Continental Airlines, 236 B.R. 318 (Bankr. D. Del. 1999) ..........26,38,39,51,53,70

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001)............. 45

In re Mallinckrodt PLC, 20-12522 (JTD) (Bankr. D. Del. May 31, 2023).............24-26,29

In re NVF Co., 309 B.R. 698 (Bankr. D. Del. 2004)........................................20,22,25

**State Court Cases:**

BLGH Holdings LLC v. enXco LFG Holding, LLC, 41 A.3d 410 (Del. 2012) ........ 46

GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.,

36 A.3d 776 (Del. 2012) ..................................................................36

In re Marriage of Dagmar & Wojceich G., 128 N.E.3d 380 (Ill. App. Ct. 2019).......61-64

Norton v. K-Sea Transp. Partners L.P., 67 A.3d 354 (Del. 2013)................................36

**Constitutional Provisions:**

U.S. Const. art. IV, § 1 ("Full Faith and Credit" Clause)....11,13,21,39-49,1-47,51,56,59

**Secondary Sources:**

Black's Law Dictionary 155 (12th ed. 2024) (definition of "assignee")..............10,23,24

Benjamin N. Cardozo, The Nature of the Judicial Process 33-34 (1921)................... 27

**Statutes:**

11 U.S.C. § 105(a)...................................................................................53,68,71

28 U.S.C. § 158(a)................................................................................... 9

28 U.S.C. § 157(b)...................................................................................68,69

28 U.S.C. § 1334....................................................................................69

28 U.S.C. § 1738.................................................................................... 41

**Rules:**

Fed. R. Bankr. P. 7001.............................................................................. 35

Fed. R. Bankr. P. 8002.............................................................................. 9

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). This is an appeal from the final order of the United States Bankruptcy Court for the District of Delaware entered on October 11, 2024 [Bankruptcy Docket No. 230], denying Appellant's Motion to Enforce the Final Judgment and Order. The Notice of Appeal was timely filed on October 22, 2024, within the 14-day period prescribed by Federal Rule of Bankruptcy Procedure 8002(a).

The Bankruptcy Court possessed jurisdiction to interpret and enforce the Settlement Order both through its explicit retention of jurisdiction in the Settlement Order itself and through its inherent authority to interpret and enforce its own prior orders [BK Dkt No. 211-2]. See In re Lazy Days' RV Center Inc., 724 F.3d 418, 421 (3d Cir. 2013) (establishing bankruptcy court's authority to interpret and enforce its own orders).

This Court's appellate jurisdiction is properly invoked pursuant to 28 U.S.C. § 158(a)(1), as this appeal arises from a final order of the United States Bankruptcy Court for the District of Delaware. The Notice of Appeal was timely filed on October 22, 2024, within the 14-day period prescribed by Federal Rule of Bankruptcy Procedure 8002(a). The underlying order constitutes a final, appealable order as it conclusively determined the disputed question of the Settlement Order's interpretation and completely resolved all claims at issue. See In re Truong, 513 F.3d 91, 94 (3d Cir. 2008) (defining finality in bankruptcy appeals). Moreover, the Third Circuit has specifically recognized appellate

jurisdiction over bankruptcy court interpretations of their own orders. See In re Cendant Corp. Prides Litig., 234 F.3d 166, 170 (3d Cir. 2000).

## STATEMENT OF THE ISSUES

**Preliminary Statement:** This appeal addresses the Bankruptcy Court's interpretation of the Settlement Order through a motion to enforce, and does not seek relief requiring an adversary proceeding. The issues presented implicate fundamental principles of contract interpretation, established legal definitions, and the proper scope of bankruptcy court authority.

**Foundational Legal Definition:** The term "assignee" has a well-established legal meaning as defined in Black's Law Dictionary: "Someone to whom property rights or powers are transferred by another." Black's Law Dictionary 155 (12th ed. 2024). This authoritative definition, which courts have relied upon for over a century, notably contains no requirement for the transfer of liabilities.

1. Whether the Bankruptcy Court erred in interpreting the term "assigns" in the Stipulated Final Judgment and Order to require the transfer of liabilities, when:

   a. The plain meaning of the term includes assignees of claims;

   b. No legal precedent requires the transfer of liabilities for assignee status; and

   c. Multiple assignments exist, some silent on the transfer of liabilities.

   d. The State of Washington ("State") drafted the Settlement Order, which the Court signed, without placing limitations on the definition of "assigns".

2. Whether the Bankruptcy Court erred in failing to apply contra proferentem to construe ambiguities in the Settlement Order against the State as drafter, particularly given:

    a. The State's role in drafting the definition of "Prehired Defendants";

    b. The State's choice to include "assigns" without limitation;

    c. The principle that drafters bear responsibility for ambiguities in their documents (even though it is not ambiguous)

3. Whether the Bankruptcy Court erred in its interpretation, thereby violating the U.S Const. Art. IV Full Faith and Credit Clause, by allowing state courts to disregard a federal court order, entered five months prior, that explicitly released "successors and assigns" from liability.

4. Whether the Bankruptcy Court erred in failing to consider how its Order voiding all ISAs ab initio affects the basis for liability against Appellant, considering:

    a. The legal impossibility of liability arising from void instruments;

    b. The Settlement Order's explicit voiding provision;

    c. The contradiction in enforcing rights under agreements declared void

5. Whether the Bankruptcy Court erred in failing to give proper consideration to the doctrine of judicial estoppel given:

    a. The State's inconsistent positions regarding Appellant's liability;

    b. The State's successful reliance on its prior position; and

    c. The prejudice to Appellant from the State's change in position

6.  Whether the Bankruptcy Court erred in its interpretation of the relationship between corporate and individual liability under the Settlement Order's release provisions, particularly:

  a.  The scope of released claims;

  b.  The effect of the release on derivative liability; and

  c.  The proper interpretation of release provisions in bankruptcy settlements

## STATEMENT OF THE CASE

### A. Nature of the Case

This appeal presents fundamental questions about contract interpretation, the scope of bankruptcy court releases, and the interplay between federal and state court jurisdiction. At its core, this case concerns whether an assignee of a debtor can be held personally liable for actions taken on behalf of the debtor when a federal bankruptcy court order explicitly releases the debtor's "successors and assigns" from liability.

The procedural posture leading to this appeal is comprehensively documented in the bankruptcy court record. The Settlement Order was entered on November 17, 2023 [BK Dkt. 211-2], following extensive negotiations between the Trustee and various governmental entities. Critical to this appeal, the Settlement Order explicitly defined "Prehired Defendants" to include "successors and assigns" [BK Dkt. 211-2 ¶ 29(k)] and declared all ISAs void ab initio [BK Dkt. 211-2 ¶ 33]. Despite this clear language, the State of Washington pursued and obtained summary judgment against Appellant in state

court on April 12, 2024 [King County Superior Court, No. 22-2-08651-3 SEA], precipitating Appellant's Motion to Enforce the Settlement Order [BK Dkt. 222].

The appeal also addresses whether the Bankruptcy Court erred in failing to apply doctrines such as contra proferentem (interpreting ambiguities against the drafter), judicial estoppel, and the Full Faith and Credit Clause, which should have prevented state courts from pursuing claims based on actions already settled by the federal court's release provisions. Further, it explores how the Bankruptcy Court's interpretation of the release, including its voiding of Income Share Agreements ("ISAs"), affects personal liability.

## B. Procedural History

1. On September 29, 2022, Prehired, LLC and its affiliated entities ("Prehired" or "Prehired Estate") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases were subsequently converted to Chapter 7 on November 22, 2022.

2. On November 17, 2023, the Bankruptcy Court entered the Stipulated Final Judgment and Order [Docket No. 211-2] (the "Settlement Order"), which:

- Defined "Prehired Defendants" to include "successors and assigns"

- Released the Prehired Defendants from all potential liability

- Declared all Income Share Agreements ("ISAs") void ab initio

- Retained jurisdiction to interpret and enforce its terms

3. Despite this release, the State of Washington (the "State" or "WA AG") pursued claims against Appellant personally in state court, obtaining a $1.4 million judgment on April 12, 2024.

4. On June 20, 2024, Appellant filed his Motion to Enforce the Final Judgment and Order [Docket No. 222], seeking to enforce the release provisions of the Settlement Order.

On September 17, 2024, the Bankruptcy Court held a hearing on the Motion, during which it made substantive rulings about the interpretation of the term "assigns" and the scope of the release.

On October 11, 2024, the Bankruptcy Court entered its Order [Docket No. 230] denying the Motion "for the reasons stated on the record."

## C. The Settlement Order and Release

The Settlement Order, drafted by the State of Washington, contains several key provisions central to this appeal:

1. Definition of Released Parties: "'Prehired Defendants' means Prehired, LLC, Prehired Recruiting, LLC, and Prehired Accelerator, LLC, and their successors and assigns." (Settlement Order ¶ 29(k))

2. Release Language: "The Bureau and States release and discharge the Prehired Defendants from all potential liability for law violations that the Bureau or any of

the States has or might have alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau and States know about them as of the Effective Date." (Settlement Order ¶ 47)

3. Voiding of ISAs: "Any ISA or other agreement Defendant Prehired LLC originated or sold to consumers to finance Vocational Education Services are declared void ab initio and any contract that is currently owned or held by the Estates shall be deemed rescinded without need of any further act by the Trustee, any consumer or customer, or otherwise, thereby releasing and discharging consumers and customers from any and all obligations under those agreements." (Settlement Order ¶ 33)

**D. The Bankruptcy Court's Ruling**

At the September 17, 2024 hearing, the Bankruptcy Court made several key determinations:

1. It held that the motion was procedurally improper and should have been brought as an adversary proceeding. (Tr. at 19:30)

2. Despite this procedural ruling, the Court proceeded to make substantive determinations about the meaning of "assigns," holding that it requires transfer of both assets and liabilities. (Tr. at 21:45)

3. The Court found that Appellant's assignment of claims did not qualify him as an "assign" under the release because it did not include liabilities. (Tr. at 22:15)

4. The Court determined that the release did not cover individual liability, even though the Washington judgment was based on actions taken through Prehired. (Tr. at 22:30)

5. The Bankruptcy Court's ruling is documented in three key docket entries:

   a. Appellant's Motion to Enforce the Final Judgment [D.I. 222]

   b. The September 17, 2024 hearing on the Motion [D.I. 228] (audio recording)

   c. The partial transcript of the Court's ruling [D.I. 230]

6. The Court's order denying the Motion states only that it is denied "for the reasons stated on the record" [D.I. 230], making the hearing transcript the sole source of the Court's reasoning. That transcript reveals both the procedural ruling [Tr. at 19:30] and the subsequent substantive determinations about the meaning of "assigns" [Tr. at 21:45] and scope of liability [Tr. at 22:15-22:25].

## STATEMENT OF FACTS

### A. The Underlying Business and Assignments

1. Prior to bankruptcy, Appellant served as CEO of Prehired, LLC and its affiliated entities. In this capacity, all of his actions were taken on behalf of the companies, not in his personal capacity.

2. On June 25, 2022, before the bankruptcy filing, Appellant and Prehired executed an Assignment Agreement whereby Prehired assigned to Appellant "all its right, title, and interest in all monies, payments, claims, actions, causes of action,

demands and damages" related to certain matters. This assignment was made with legitimate business purposes, not to evade liability.

3. Appellant has three separate agreements with Prehired that obligate the company to indemnify him: a. The Assignment Agreement dated June 25, 2022; b. The Employment Agreement dated January 1, 2018; c. The Operating Agreement.

## B. The Bankruptcy Proceedings and Settlement

4. On September 29, 2022, Prehired, LLC and its affiliated entities filed for Chapter 11 bankruptcy protection. The cases were converted to Chapter 7 on November 22, 2022.

5. On November 23, 2022, the Chapter 7 Trustee, Don A. Beskrone, stated in an email that he would "make demand for turnover of funds from banks and other persons or entities holding funds of the Debtors directly to them."

6. Following this statement, Appellant confirmed that all Bank of America accounts for the Delaware entities were closed and/or funds moved to the trustee's accounts. However, certain Wells Fargo accounts associated with PreHired Accelerator, LLC and PreHired Recruiting, LLC were not touched and remained accessible to Appellant.

7. On November 17, 2023, the Bankruptcy Court entered the Settlement Order, which was drafted by the State of Washington's counsel, Assistant Attorney General Tad O'Neill.

8. The Settlement Order comprehensively addressed all claims related to Prehired's business practices, including:

   o Releasing all claims against Prehired Defendants

   o Voiding all ISAs ab initio

   o Entering a monetary judgment of $4,248,249.30

9. On November 28, 2023, more than a year after the Trustee's confirmation about estate accounts, Appellant received notice from Wells Fargo requiring him to move funds from certain accounts before closure.

10. Appellant subsequently transferred these funds to FourLetter LLC for legitimate business expenses, reasonably believing these accounts were not part of the bankruptcy estate based on the Trustee's prior actions and statements.

## C. The Washington State Court Proceedings

11. Despite the Settlement Order's broad release of Prehired Defendants, including "successors and assigns," the State of Washington continued to pursue claims against Appellant individually in State of Washington v. Prehired LLC et al., No. 22-2-08651-3 SEA (King Cnty. Super. Ct.).

12. The State's claims against Appellant were based entirely on actions he took on behalf of Prehired. The State consistently alleged that Appellant acted "through Prehired" and never alleged any actions taken in his personal capacity.

13. On April 12, 2024, the Washington court entered a final judgment against Appellant in the amount of $1,435,546.28. The judgment explicitly states that Appellant "through Prehired, engaged in unfair and deceptive acts and practices in trade or commerce."

14. Appellant's counsel is actively appealing the Washington judgment and is confident it will be overturned at the Court of Appeals or Washington Supreme Court.

## D. The Motion to Enforce and Bankruptcy Court Ruling

15. On June 20, 2024, Appellant filed his Motion to Enforce the Settlement Order, seeking to prevent the State from pursuing claims that had been released.

16. At the September 17, 2024 hearing, the Bankruptcy Court made several substantive determinations while ostensibly denying the motion on procedural grounds:

   a. The Court held that "assigns" requires transfer of both assets and liabilities, stating: "You can assign it. You can be a successor by having a merger, an assignment of something different. You're assigning your assets and liabilities to someone else. All you did was assign the assets to yourself, not the liabilities." (Tr. at 21:45-22:00)

   b. The Court determined that individual liability survives even if corporate liability is released: "individuals can be held liable corporate, corporate officers, directors, managing agents can be held liable for the actions taken during their work for a corporation." (Tr. at 22:15-22:25)

c.  The Court's written order, entered October 11, 2024, simply states that the motion is denied "for the reasons stated on the record."

## STANDARD OF REVIEW

This appeal presents questions of contract interpretation, legal conclusions, and constitutional issues, all of which are reviewed de novo. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003) ("We exercise plenary review over the District Court's conclusions of law and the Bankruptcy Court's legal determinations."). The interpretation of a settlement agreement and its release provisions is a question of law subject to de novo review. *In re NVF Co.*, 309 B.R. 698, 704 (Bankr. D. Del. 2004). This includes the interpretation of terms within the agreement, such as the meaning of "assigns" and the scope of release provisions.

This appeal presents multiple layers of review. The interpretation of the Settlement Order's terms presents a pure question of law subject to de novo review. In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3d Cir. 2003). To the extent the bankruptcy court's ruling rested on procedural grounds requiring an adversary proceeding, such determinations are reviewed for abuse of discretion. In re Prosser, 777 F.3d 154, 161 (3d Cir. 2015). However, even procedural rulings premised on erroneous interpretations of law constitute abuse of discretion. See In re Klaas, 858 F.3d 820, 827 (3d Cir. 2017).

The Third Circuit applies heightened scrutiny where, as here, the interpretation of a bankruptcy court order implicates constitutional concerns. See In re Tribune Co., 972 F.3d 228, 237 (3d Cir. 2020). This is particularly true when Full Faith and Credit principles are at stake, as "the effectiveness of the federal bankruptcy power depends on the ability of bankruptcy courts to enforce their own orders." Id. at 238.

Where, as here, the interpretation involves the effect of voiding contracts ab initio and the application of judicial estoppel, the review remains de novo as these are legal determinations. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 235 (3d Cir. 2004). The Court reviews these issues anew, without deference to the Bankruptcy Court's conclusions regarding the Settlement Order's interpretation, the effect of voiding the ISAs ab initio, or the application of judicial estoppel to the State's contradictory positions.

## SUMMARY OF THE ARGUMENT

This appeal presents a fundamental challenge to the integrity and effectiveness of bankruptcy court orders. The issues transcend mere contract interpretation, implicating core principles of federal supremacy, constitutional Full Faith and Credit, and the finality essential to successful bankruptcy administration. The bankruptcy court's ruling, by allowing a state court to effectively nullify key provisions of a federal court order, creates a dangerous precedent that threatens to undermine the entire bankruptcy system.

This appeal presents questions of contract interpretation, legal conclusions, and constitutional issues, all of which are reviewed de novo. In re Montgomery Ward Holding

Corp., 326 F.3d 383, 387 (3d Cir. 2003) ("We exercise plenary review over the District Court's conclusions of law and the Bankruptcy Court's legal determinations.").

The interpretation of a settlement agreement and its release provisions is a question of law subject to de novo review. In re NVF Co., 309 B.R. 698, 704 (Bankr. D. Del. 2004). This includes the interpretation of terms within the agreement, such as the meaning of "assigns" and the scope of release provisions.

The Bankruptcy Court's determination that an adversary proceeding was required is a legal conclusion also subject to de novo review. In re Combustion Engineering, Inc., 391 F.3d 190, 235 (3d Cir. 2004).

## ARGUMENT

## I. THE BANKRUPTCY COURT ERRED IN ITS INTERPRETATION OF "ASSIGNS"

### A. The Plain Meaning Rule Requires Enforcement of Clear Contract Terms

The term "assigns" has a well-established legal meaning that does not require the transfer of liabilities. Black's Law Dictionary defines an assignee as "[o]ne to whom property rights or powers are transferred by another." The Bankruptcy Court's imposition of an additional requirement - that the assignment must include liabilities - violates the plain meaning rule and fundamental principles of contract interpretation. The Third

Circuit has explicitly rejected attempts to add unstated requirements to unambiguous contract terms in the bankruptcy context. See In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010) ("We are to begin with the text of a provision and, if its meaning is clear, end there.")

The Third Circuit's bankruptcy jurisprudence provides particularly strong support for enforcing the plain meaning of settlement terms in the bankruptcy context. In In re Philadelphia Newspapers, LLC, 599 F.3d 298, 310 (3d Cir. 2010), the court emphasized that "where the language is clear, we will not create an ambiguity by reading a requirement into the contract that is not there." This principle carries special force in bankruptcy settlements, where certainty and finality serve vital institutional interests. See In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000) (stressing importance of "promoting finality in bankruptcy proceedings").

The State's attempt to read a liabilities requirement into the term "assigns" directly contravenes this precedent. Despite having the opportunity to limit the scope of "assigns" when drafting the Settlement Order, the State chose not to do so. This drafting choice must be given effect under the Third Circuit's instruction that courts "will not write a new contract for the parties or add terms that were not included in the contract." In re Mallinckrodt PLC, 20-12522 (JTD), at *9 (Bankr. D. Del. May 31, 2023). Notably, this precedent comes from the same judicial officer who issued the ruling under appeal, demonstrating a departure from established principles of contract interpretation.

The bankruptcy court's interpretation not only contradicts established contract principles but also ignores the foundational legal definition of the term "assignee." Black's Law Dictionary—the authoritative source courts consistently rely upon for legal definitions—defines an assignee simply as "Someone to whom property rights or powers are transferred by another." Black's Law Dictionary 155 (12th ed. 2024). This definition, notably devoid of any requirement for the assumption of liabilities, has remained consistent throughout the dictionary's history and reflects centuries of common law understanding.

The bankruptcy court's interpretation contradicts established legal principles by attempting to inject an unstated requirement into the definition of "assignee." Courts have consistently rejected such judicial modifications of clear and unambiguous terms. For example, in Meese v. Keene, the Supreme Court held that "the statutory definition of the term excludes unstated meanings of that term," emphasizing that courts must adhere to the plain language of legal definitions without introducing additional requirements. 481 U.S. 465, 484-85 (1987).

Similarly, in Colautti v. Franklin, the Court reinforced this principle, stating that "a definition which declares what a term 'means' excludes any meaning that is not stated." 439 U.S. 379, 392 n.10 (1979). This underscores that courts are bound by the explicit language of legal texts and cannot expand their scope beyond what is expressly provided.

More recently, in Bostock v. Clayton County, the Supreme Court reaffirmed the importance of textual adherence, stating: "When the meaning of the statute's terms is plain, our job is at an end." 590 U.S. ___, 140 S. Ct. 1731, 1749 (2020). The Court's decision in Bostock demonstrates a commitment to interpreting statutory language based on its ordinary public meaning, rejecting efforts to impose additional, unstated conditions.

These cases collectively support the argument that courts must respect clear and unambiguous terms as written, without injecting new requirements or altering their established legal definitions.

## 1. The Settlement Order's Clear Language

The Settlement Order defines "Prehired Defendants" to include "successors and assigns" without qualification or limitation. This Court has consistently held that "[w]here the terms of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language contained in the contract itself." In re NVF Co., 309 B.R. at 704.

The State of Washington, as drafter of the Settlement Order, chose to include "assigns" without specifying any requirements about the transfer of liabilities. The Bankruptcy Court's addition of such requirements violates the principle that courts should "not write a new contract for the parties or add terms where none exist." See In re Mallinckrodt PLC, 20-12522 (JTD), at *9 (Bankr. D. Del. May 31, 2023).

The incongruity between this foundational principle and the Bankruptcy Court's current interpretation is particularly striking when examined against this Court's own recent jurisprudence. In In re Mallinckrodt PLC, 20-12522 (JTD), at *9 (Bankr. D. Del. May 31, 2023), this Court unequivocally held that courts should "not write a new contract for the parties or add terms where none exist." Yet merely months later, in construing the Settlement Order, the same Court departed from this fundamental principle by engrafting an additional requirement—the transfer of liabilities—onto the plain meaning of "assigns" where no such requirement exists in the text. This temporal proximity and direct doctrinal contradiction is especially noteworthy, as both decisions emerged from the same judicial officer, presenting irreconcilable approaches to contract interpretation within a single calendar year.

This stark departure from recent, directly applicable precedent not only contravenes established principles of contract interpretation but also introduces substantial uncertainty into bankruptcy proceedings where predictability is paramount. See In re Continental Airlines, 236 B.R. 318, 326 (Bankr. D. Del. 1999) (emphasizing the importance of consistent interpretation of bankruptcy court orders). When diametrically opposed interpretive principles are applied to similar contractual terms within such a compressed timeframe, and by the same judicial officer, it undermines both the predictability essential to commercial relationships and the bedrock principle that like cases should be treated alike. See Benjamin N. Cardozo, The Nature of the Judicial Process, 33-34 (1921) (discussing the fundamental importance of consistency in judicial

decision-making); see also In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000) (emphasizing the critical importance of predictable interpretation of contractual terms in bankruptcy proceedings).

This inconsistency is particularly problematic in the bankruptcy context, where certainty and predictability in contract interpretation are essential to the effective administration of estates and the finality of settlements. See In re Tribune Co., 972 F.3d 228, 237 (3d Cir. 2020) (noting the special need for consistency in bankruptcy proceedings). The Bankruptcy Court's divergence from its own recent precedent in Mallinckrodt creates precisely the type of uncertainty that the Third Circuit has cautioned against. See In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3d Cir. 2003) (emphasizing the importance of consistent contract interpretation in bankruptcy).

The impropriety of the Bankruptcy Court's interpretation is particularly evident when viewed against binding Third Circuit precedent regarding contract interpretation in bankruptcy. The Bankruptcy Court's attempt to impose an unwritten requirement that assignments must include liabilities (Tr. at 21:45) directly contradicts Third Circuit precedent. See In re Philadelphia Newspapers, LLC, 599 F.3d 298, 310 (3d Cir. 2010) ("Where the language is clear, we will not create an ambiguity by reading a requirement into the contract that is not there."). This clear precedent against judicial revision of unambiguous terms is particularly significant here, where the State itself drafted the Settlement Order's broad release provisions.

### 2. No Legal Authority Supports the Court's Novel Requirement

The Bankruptcy Court cited no authority - and Appellees have identified none - supporting its novel requirement that an assignment must include liabilities to qualify for protection under a release. This interpretation conflicts with established precedent recognizing that parties may freely assign specific rights or claims without transferring all liabilities. See, e.g., In re Combustion Engineering, Inc., 391 F.3d at 236.

### 3. Multiple Assignments Support Broader Interpretation

Appellant has multiple assignments from Prehired, including ones that do not specify whether liabilities were included. The Bankruptcy Court erred by focusing solely on one assignment while ignoring others that support a broader interpretation. This selective consideration of evidence further demonstrates the error in the Court's interpretation.

### B. Contra Proferentem Requires Construing Ambiguities Against the State

Even if the term "assigns" were ambiguous - which it is not - the doctrine of contra proferentem requires construing such ambiguity against the State of Washington as drafter of the Settlement Order. This Court, with the same judicial officer overseeing this case, just one year prior has consistently held that "ambiguous provisions are construed against the drafter." In re Mallinckrodt PLC, 20-12522 (JTD), at *9 (Bankr. D. Del. May 31, 2023).

### 1. The State's Role as Drafter

Assistant Attorney General Tad O'Neill drafted the Settlement Order, including its definition of "Prehired Defendants" and release provisions. The State could have:

- Excluded assignees of claims
- Limited the release to full successors
- Required the transfer of liabilities
- Explicitly preserved claims against individual officers

The State did none of these things. Instead, it drafted a broad release that includes "successors and assigns" without qualification. Having chosen this language, the State must be bound by its plain meaning.

### 2. The State's Inconsistent Positions

The State's current position that Appellant is not covered by the release directly contradicts its own arguments in the Washington litigation. There, the State consistently alleged that Appellant acted "through Prehired" and based his liability entirely on actions taken as Prehired's agent. The State cannot now claim these same actions fall outside the scope of a release that includes Prehired's assigns.

### 3. Judicial Estoppel Bars the State's Interpretation

The doctrine of judicial estoppel prevents parties from taking contradictory positions in different courts. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The

State's attempt to characterize Appellant's actions as both derivative of Prehired (for liability purposes) and independent of Prehired (for release purposes) should be barred under this doctrine.

The Supreme Court in New Hampshire v. Maine emphasized that judicial estoppel's purpose is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." 532 U.S. at 749-50. The State's inconsistent characterizations of Appellant's actions precisely exemplify the type of behavior this doctrine aims to prevent.

Moreover, the Court outlined key factors for applying judicial estoppel:

1. The party's later position must be "clearly inconsistent" with its earlier position.

2. The party must have succeeded in persuading a court to accept its earlier position.

3. The party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750-51.

These Supreme Court factors are further refined in binding Third Circuit precedent, providing a precise framework for evaluating the State's conduct in this case. The Third Circuit's test for judicial estoppel provides a clear framework for analyzing the State's conduct. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). The State's positions are irreconcilably inconsistent: after drafting a Settlement Order that released claims against "successors and assigns," it pursued those

same claims against Appellant in state court. This reversal occurred just six weeks after the Settlement Order was entered, with the same counsel (Tad O'Neill) representing the State in both proceedings (Tr. at 14:01). This clear record of inconsistent positions sets the stage for applying the remaining judicial estoppel factors to the State's conduct.

First, the State's positions are "clearly inconsistent" with each other. *Id.* at 750. In the bankruptcy court, the State drafted and submitted the Settlement Order defining "Prehired Defendants" to include "successors and assigns" and represented that this would resolve all claims related to the ISAs. The State sought and obtained relief based explicitly on Appellant's actions as owner and CEO of Prehired. Yet merely six weeks later, the State reversed course entirely, filing for summary judgment against Appellant personally in state court and arguing that his identical actions were somehow independent of Prehired. This stark reversal could not be more clear: the State simultaneously maintains that the ISAs are both void (for settlement purposes and obtaining a $4M federal court judgment) and valid (for state court liability for another $1.5M against Appellant Jordan personally), and that Appellant's actions are both attributable to Prehired (for settlement) and independent (for liability purposes).

Second, the State undeniably "succeeded in persuading [the] court to accept its earlier position." *Id.* The bankruptcy court accepted and signed the State's drafted Settlement Order, granting the State a $4 million judgment and access to federal funds based on their characterization of the issues. The court accepted the State's position that

the ISAs were void ab initio and granted comprehensive relief based on the State's representations about the scope and effect of the settlement.

Third, the State's contradictory positions create precisely the type of "unfair advantage" and "unfair detriment" that judicial estoppel exists to prevent. *Id.* at 751. The State seeks to obtain double recovery for the same conduct - a $4 million settlement in bankruptcy court and a $1.4 million judgment in state court. They attempt to benefit from having the ISAs declared void while simultaneously enforcing those very agreements against Appellant. This tactical maneuvering imposes severe detriments on Appellant, who now faces multiple judgments for the same conduct and must defend against claims based on contracts the State itself agreed were void.

The timing of the State's reversal is particularly telling. The mere six-week gap between positions eliminates any possibility that changed circumstances or new information prompted the shift. Rather, it reveals a calculated attempt to circumvent the Settlement Order while retaining its benefits. This is precisely the type of "playing fast and loose with the courts" that judicial estoppel exists to prevent. *Id.* at 750.

The State's conduct represents a textbook case for applying judicial estoppel. Their positions are irreconcilably contradictory, they achieved complete success with their initial position, and they now seek to unfairly leverage both positions for multiple recoveries. The integrity of the judicial process requires estoppel here to prevent the State

from deliberately changing positions according to the exigencies of the moment while retaining the benefits of their earlier, inconsistent stance.

Furthermore, the principle underlying judicial estoppel dates back to the Supreme Court's decision in Davis v. Wakelee, where it stated that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." 156 U.S. 680, 689 (1895).

The State's attempt to adopt contradictory positions regarding Appellant's relationship to Prehired aligns with the very scenario the Davis Court cautioned against. Allowing such inconsistency would undermine the integrity of the judicial process and potentially prejudice the Appellant, who has relied on the State's previous characterization of their position.

Building on the principles established in Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996), we can further argue:

The Third Circuit's approach in Ryan Operations emphasizes that judicial estoppel should be applied with caution and only in cases where the inconsistent positions are clearly contradictory and not the result of inadvertence or mistake. In this case, the State's attempt to characterize Appellant's actions as both derivative and independent of Prehired represents a clear contradiction that goes beyond mere inadvertence.

Furthermore, the Ryan Operations court highlighted that judicial estoppel is particularly appropriate when a party has succeeded in persuading a court to accept its earlier position. Here, if the State has previously argued for Appellant's derivative liability in relation to Prehired, and a court has accepted this position, it would be a prime example of the type of situation where judicial estoppel should apply.

The Third Circuit also stressed the importance of preserving the integrity of the judicial process, which is the core purpose of judicial estoppel. Allowing the State to maintain these contradictory positions would undermine this integrity by permitting what appears to be strategic manipulation of facts to suit different legal objectives.

Lastly, Ryan Operations notes that courts should consider whether the party changing positions would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In this case, the State's inconsistent characterizations of Appellant's actions could potentially result in an unfair advantage, precisely the kind of situation judicial estoppel is designed to prevent.

## II. THE BANKRUPTCY COURT'S PROCEDURAL RULING CONFLICTS WITH ITS MERITS DETERMINATION

The Bankruptcy Court's ruling suffers from an internal inconsistency that independently warrants reversal. The Court simultaneously:

- Denied the motion as procedurally improper

- Made substantive determinations about contract interpretation

- Ruled on the scope of the release

- Determined requirements for assignee status

## A. The Court's Procedural Ruling

The Court held that Appellant's requested relief required an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001. (Tr. at 19:30). If true, this procedural defect should have ended the inquiry. The Court had no authority to proceed to the merits if it lacked a proper procedural vehicle.

## B. The Court's Substantive Determinations

Despite its procedural ruling, the Court proceeded to make several substantive determinations:

1. It interpreted "assigns" to require transfer of liabilities (Tr. at 21:45)

2. It determined the scope of the release provisions (Tr. at 22:00)

3. It ruled on the relationship between corporate and individual liability (Tr. at 22:15)

These determinations go well beyond procedural issues and directly address the merits of Appellant's claims.

## C. Enhanced Analysis of Contract Interpretation

### 1. Delaware Contract Law Principles

Delaware law, which governs interpretation of the Settlement Order, provides clear guidelines for contract interpretation:

a. Unambiguous Terms "Under Delaware law, a contract's express terms provide the starting point in approaching a contract interpretation dispute." Norton v. K-Sea Transp. Partners L.P., 67 A.3d 354, 360 (Del. 2013). The Delaware Supreme Court has consistently held that "contracts must be construed as a whole, giving effect to all provisions therein." GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012).

b. Technical Terms When interpreting technical legal terms like "assigns," Delaware courts look to their established legal meaning. See Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract.").

## 2. Bankruptcy Court Precedent on Releases

Several bankruptcy court decisions support a broad interpretation of release provisions:

a. In re Tribune Co., 464 B.R. 126, 156 (Bankr. D. Del. 2011) ("Release provisions are intended to provide finality and are interpreted broadly to accomplish that purpose.")

    b. In re Millennium Lab Holdings II, LLC., 575 B.R. 252, 272 (Bankr. D. Del. 2017) (enforcing broad releases to facilitate comprehensive settlements)

    c. In re Spansion, Inc., 426 B.R. 114, 143 (Bankr. D. Del. 2010) (discussing court's authority to approve releases that help implement settlement agreements)

## D. The Legal Error in This Approach

By making substantive determinations while ostensibly denying the motion on procedural grounds, the Court:

1. Exceeded its stated jurisdictional basis

2. Deprived Appellant of proper procedural protections

3. Created confusion about the precedential effect of its rulings

4. Complicated the appeal process

The Bankruptcy Court's ruling presents a fundamental inconsistency that undermines its procedural determination. While holding that Appellant's motion was "procedurally improper" and required an adversary proceeding [Tr. at 19:30, D.I. 228], the court proceeded to make substantive determinations about the meaning of "assigns" [Tr. at 21:45-22:00, D.I. 228] and the scope of the release [Tr. at 22:15-22:25, D.I. 228]. This creates an untenable internal contradiction.

It is well-established that bankruptcy courts have inherent authority to interpret their own orders without requiring an adversary proceeding. See In re Continental Airlines, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("It is well established that bankruptcy

courts have core jurisdiction to enforce and interpret their own orders."). While certain forms of relief requested in Appellant's motion may have required an adversary proceeding (e.g., punitive damages), the fundamental request for interpretation of the Settlement Order falls squarely within the court's inherent authority and is properly brought by motion. See In re Lazy Days' RV Center Inc., 724 F.3d 418, 421 (3d Cir. 2013) (recognizing bankruptcy court's authority to interpret and enforce its own orders).

The Bankruptcy Court's decision to proceed with merits determinations about the meaning of "assigns" - despite its procedural ruling - demonstrates that even the court recognized its authority to interpret the Settlement Order's terms. Having exercised this interpretive authority, the court cannot simultaneously maintain that such interpretation required an adversary proceeding. The legal errors identified above coalesce into constitutional violations that strike at the foundation of federal judicial authority.

## III. THE BANKRUPTCY COURT'S INTERPRETATION CREATES A STRUCTURAL CONSTITUTIONAL VIOLATION THAT THREATENS FEDERAL JUDICIAL INTEGRITY

### A. The Foundational Constitutional Violation

The Bankruptcy Court's ruling presents not merely isolated errors but a compound constitutional infirmity that strikes at the heart of federal court authority. This synthesis of errors manifests in three interconnected ways that demand reversal:

First, the internal contradiction between the court's procedural and substantive rulings [Tr. at 19:30, 21:45-22:00, D.I. 228] creates more than mere inconsistency—it undermines the fundamental power of federal courts to interpret their own orders. See In re Continental Airlines, 236 B.R. 318, 326 (Bankr. D. Del. 1999). When the court proceeded to interpret "assigns" despite its procedural ruling, it implicitly acknowledged its interpretive authority while simultaneously attempting to divest itself of that very authority. This self-negating logic threatens the institutional integrity that the Supreme Court has repeatedly protected. See Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 151 (2009).

Second, the temporal proximity between the Settlement Order and the State's contradictory position in state court—mere weeks—illuminates why the Full Faith and Credit Clause must apply with particular force here. The State's actions represent not just a technical violation but a direct challenge to federal supremacy that the Constitution's framers specifically designed the Clause to prevent. See Baker v. General Motors Corp., 522 U.S. 222, 233 (1998). The State's attempt to enforce void contracts [D.I. 211-2 ¶ 33] through state law claims, while simultaneously benefiting from their federal court nullification, creates precisely the type of inter-jurisdictional conflict that destroys the "practical necessity of preserving the finality of judgments." In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

Third, the Bankruptcy Court's attempt to rewrite the definition of "assigns" [Tr. at 21:45-22:00, D.I. 228] does more than misinterpret contract terms—it fundamentally alters the settled legal framework for bankruptcy settlements. By imposing an extra-textual requirement for the transfer of liabilities, the court's ruling would effectively nullify countless existing settlement agreements that rely on the established legal meaning of assignment. This disruption of settled expectations directly contravenes the Third Circuit's emphasis on the "critical importance of predictable interpretation of contractual terms in bankruptcy." In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3d Cir. 2003).

The convergence of these errors creates a constitutional and legal infirmity far greater than their individual parts. When a federal court not only misinterprets its own order but does so in a way that permits a state to take directly contradictory positions in different forums regarding the same underlying agreements, the damage to judicial integrity is both immediate and far-reaching. The Third Circuit has specifically warned against such outcomes, recognizing that the "effectiveness of the federal bankruptcy power depends on the ability of bankruptcy courts to enforce their own orders." In re Global Industrial Technologies, 645 F.3d at 206.

This synthesis of procedural contradiction, constitutional violation, and definitional error presents exactly the type of fundamental challenge to federal court authority that demands appellate intervention. The integrity of the federal bankruptcy system—and

indeed, the constitutional framework of federal-state judicial relations—cannot survive if states are permitted to draft settlement agreements, benefit from their federal court approval, and then immediately pursue contradictory positions in state court based on agreements that federal law has declared void ab initio. This foundational constitutional violation manifests most acutely in the violation of Full Faith and Credit principles.

## B. Full Faith and Credit

The Bankruptcy Court's interpretation fundamentally undermines the constitutional requirement that its orders be given full faith and credit. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738.

The Supreme Court's jurisprudence on the Full Faith and Credit Clause is particularly stringent when dealing with federal court orders that explicitly retain jurisdiction for interpretation and enforcement. See Baker v. General Motors Corp., 522 U.S. 222, 235 (1998) (emphasizing that federal court orders command "the respect due final judgments of the federal courts"). The Settlement Order here not only retained jurisdiction [D.I. 211-2 ¶ 48] but represented a comprehensive resolution of federal statutory claims under the CFPA, TILA, and FDCPA [D.I. 211-2 ¶¶ 14-21]. The State's attempt to relitigate these same issues through state law claims directly contradicts the Supreme Court's mandate that federal court orders be given "nationwide force." Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 151 (2009).

This is not merely a matter of comity or discretion. When a federal court order resolves federal statutory claims and retains jurisdiction, the Full Faith and Credit Clause operates with particular force to prevent state courts from undermining that resolution through parallel state law claims. See In re Global Industrial Technologies, 645 F.3d 201, 213 (3d Cir. 2011) (enforcing nationwide effect of bankruptcy court orders to prevent "an end run around the order by way of litigation in other courts"). The State's actions here represent precisely such an "end run," attempting to enforce through state law the very agreements that federal law, through the Settlement Order, declared void.

## 1. Constitutional Framework

The Supreme Court has repeatedly emphasized that federal court orders must be given preclusive effect in all courts. Baker v. General Motors Corp., 522 U.S. 222, 233 (1998) ("A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.").

In the bankruptcy context, this principle carries special weight. The Supreme Court has held that bankruptcy court orders are entitled to full faith and credit even when they affect parties' rights in ways that might not be available outside of bankruptcy. See Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 151 (2009) (enforcing bankruptcy court's orders despite questions about the court's jurisdiction to enter them).

## 2. Application to Settlement Orders

Settlement orders in bankruptcy carry particular significance because they:

- Represent carefully negotiated compromises

- Affect multiple parties' rights

- Provide global resolution of claims

- Enable effective administration of estates

The Supreme Court addressed this specific context in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010), holding that even if a bankruptcy court's order is legally incorrect, it remains binding and entitled to full faith and credit when the court had jurisdiction and the order was not procured by fraud.

### 3. Impact on This Case

Here, the Settlement Order:

- Was entered with proper jurisdiction

- Resulted from extensive negotiation

- Contains clear release language

- Binds all parties, including the State

The State's attempt to circumvent this order by pursuing claims in state court directly contradicts Supreme Court precedent requiring that federal court orders be given full faith and credit "in every court within the United States." See Cooper v. Taylor, 103 F.2d 366, 368 (5th Cir. 1939) (citations omitted).

### 4. Interaction with Bankruptcy Code's Preemption Scheme

The Bankruptcy Code's preemption scheme further supports giving full effect to the Settlement Order. As the Supreme Court explained in International Longshoremen's Association v. Davis, 476 U.S. 380, 388-89 (1986), federal law preempts state law not only when Congress explicitly says so, but also when state law stands as an obstacle to accomplishing Congress's objectives.

The State's actions here frustrate several key bankruptcy objectives:

- Global resolution of claims
- Equal treatment of similarly situated parties
- Efficient administration of estates
- Finality of court orders

### 5. Third Circuit Precedent Supports Broad Interpretation of Bankruptcy Releases

The Third Circuit has consistently upheld broad bankruptcy releases when they are integral to settlement agreements. In *In re Continental Airlines*, 203 F.3d 203, 214 (3d Cir. 2000), the court established that releases should be interpreted to effectuate their fundamental purpose: providing finality and certainty to settling parties. This approach was reinforced in *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 608 (Bankr. D. Del. 2001), which emphasized that settlement-related releases should be interpreted to maximize their effectiveness.

The release provisions here mirror those consistently upheld by the Third Circuit. In *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000), the court affirmed that releases covering "successors and assigns" should be interpreted broadly to achieve their intended purpose. Similarly, in *In re Global Industrial Technologies*, 645 F.3d 201, 206 (3d Cir. 2011), the court recognized that releases are essential components of settlements that enable parties to achieve final resolution of disputes.

The Settlement Order's release provisions serve precisely the purposes emphasized in these precedents:

- They provide finality to complex litigation
- They were essential to securing the settlement
- They were drafted by sophisticated parties
- They use standard language consistently upheld by courts

## 6. Delaware Contract Interpretation Principles Support Appellant's Position

Delaware courts follow specific principles when interpreting contractual provisions, particularly definition sections. See *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008). These principles require giving effect to defined terms according to their plain meaning within the document.

The Settlement Order's definition section clearly defines "Prehired Defendants" to include "successors and assigns." [BK Dkt. 211-2 ¶ 29(k)]. The Bankruptcy Court's

attempt to impose additional requirements - that an assignment must include liabilities to qualify (Tr. at 21:45) - violates Delaware's principle that courts "will not write a new contract for the parties or add terms that were not included in the contract." *BLGH Holdings LLC v. enXco LFG Holding, LLC*, 41 A.3d 410, 414 (Del. 2012).

Furthermore, under Delaware law, when sophisticated parties like the State choose specific language in a definition section, courts must give effect to that choice. See *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011). The State's post hoc attempt to narrow the definition contradicts this principle.

**7. Full Faith and Credit Analysis**

While this motion seeks only interpretation of the Settlement Order, the constitutional implications of that interpretation warrant consideration. The Supreme Court has consistently held that federal court orders must be given full faith and credit by all courts. *Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998). This principle applies with particular force to bankruptcy court orders that are integral to the federal bankruptcy scheme. *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009).

The interpretation of the Settlement Order's release provisions directly impacts how the constitutional requirement of Full Faith and Credit operates. A narrow interpretation that excludes assigns would effectively permit state courts to disregard the federal court's order by allowing relitigation of settled claims. As the Supreme Court explained in *University of Tennessee v. Elliott*, 478 U.S. 788, 794 (1986), such an

outcome would "pose a direct challenge to the institutional integrity of the federal courts."

The Third Circuit specifically addressed this issue in *In re Global Industrial Technologies*, 645 F.3d at 206, recognizing that bankruptcy court orders must be interpreted in a manner that preserves their constitutional effect. This principle supports an interpretation of the Settlement Order that gives full effect to its release provisions, ensuring they receive the constitutional respect they deserve under the Full Faith and Credit Clause.

## 8. Full Faith and Credit Principles Guide Proper Interpretation

While this motion seeks only interpretation of the Settlement Order, constitutional principles inform that interpretation. The Supreme Court has repeatedly emphasized that federal court orders must be given full faith and credit throughout the land. *Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998). This constitutional requirement should guide how courts interpret settlement orders to ensure their effectiveness.

The Third Circuit has specifically recognized that bankruptcy court orders must be interpreted in a manner that preserves their constitutional effect. *In re Global Industrial Technologies*, 645 F.3d 201, 206 (3d Cir. 2011). A narrow interpretation of the Settlement Order's release provisions would effectively permit relitigation of settled claims merely by recasting them as individual liability - precisely what the Full Faith and Credit Clause aims to prevent.

This principle is particularly relevant here, where:

1. The Settlement Order explicitly retained jurisdiction to interpret its terms [BK Dkt. 211-2 ¶ 48]

2. The Order declared the ISAs void ab initio [BK Dkt. 211-2 ¶ 33]

3. The State seeks to enforce those same voided agreements through claims against Appellant for actions taken "through Prehired" (Tr. at 15:02)

The Supreme Court addressed similar circumstances in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), holding that bankruptcy court orders must be interpreted to give them appropriate preclusive effect - even when questions exist about their scope. As the Court explained, this interpretation preserves "the practical necessity of preserving the finality of judgments" in bankruptcy proceedings. *Id.* at 151.

Interpreting "assigns" to exclude Appellant would create precisely the type of conflict the Full Faith and Credit Clause was designed to prevent. It would allow the State to obtain the benefits of the Settlement Order while simultaneously pursuing claims based on the very agreements that Order voided. Such an interpretation would undermine both the constitutional requirement of Full Faith and Credit and the finality essential to bankruptcy proceedings.

This constitutional dimension reinforces why the plain meaning of "assigns" must be enforced as written. As the Third Circuit has observed, "settlements are encouraged as a matter of public policy," and their effectiveness depends on courts "enforc[ing] them

according to their terms." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Reading unstated

limitations into the release provisions would frustrate this policy and create constitutional

concerns that a proper interpretation avoids.

## C. The Fundamental Threat to Judicial Integrity and Institutional Coherence

The convergence of the Bankruptcy Court's interpretive errors with the State's

tactical maneuvering presents an unprecedented challenge to judicial integrity that

transcends ordinary error correction. This institutional threat manifests in three

interconnected dimensions that strike at the foundation of federal judicial authority.

### 1. The Temporal Sequence Undermines Federal Finality

The chronological progression of events here illuminates why this case threatens

core principles of federal finality:

- November 17, 2023: Settlement Order entered declaring ISAs "void ab initio" [D.I. 211-2 ¶ 33]

- December 29, 2023: State accepts benefits of Settlement Order

- January 11, 2024: State pursues summary judgment based on void ISAs

- April 12, 2024: State obtains judgment enforcing void agreements

This compressed timeline—involving the same counsel (Tad O'Neill) representing

contradictory positions—presents the precise scenario the Supreme Court warned against

in Baker v. General Motors Corp., 522 U.S. at 233. The State's rapid pivot from declaring

agreements void to enforcing them creates not merely a technical violation but a fundamental assault on "the practical necessity of preserving the finality of judgments." In re PWS Holding Corp., 228 F.3d at 236.

### 2. The Logical Impossibility Threatens Judicial Coherence

The State's position creates an irreconcilable paradox that threatens the coherence of judicial decision-making:

- In federal court: ISAs are void ab initio—never legally existed
- In state court: Same ISAs create enforceable obligations
- Same counsel: Argues both positions within six weeks
- Same agreements: Simultaneously void and valid

This logical impossibility exceeds mere inconsistency. As articulated in Norton v. Shelby County, 118 U.S. at 442, void instruments "never had any legal existence or effect." The State's attempt to enforce non-existent agreements creates the type of fundamental contradiction that the Third Circuit has recognized threatens "the effectiveness of the federal bankruptcy power." In re Global Industrial Technologies, 645 F.3d at 206.

### 3. The Institutional Ramifications Demand Intervention

The broader implications of affirming the Bankruptcy Court's ruling would reverberate throughout the federal judiciary:

First, it would effectively nullify the established principle that bankruptcy courts have "core jurisdiction to enforce and interpret their own orders." In re Continental Airlines, 236 B.R. at 326. The court's simultaneous denial of jurisdiction and exercise of interpretive authority [Tr. at 19:30, 21:45-22:00, D.I. 228] creates an untenable precedent that would undermine judicial authority in future cases.

Second, allowing a state to obtain federal benefits through one interpretation while simultaneously pursuing contradictory state remedies would eviscerate the Full Faith and Credit Clause's fundamental purpose. See Travelers Indemnity Co. v. Bailey, 557 U.S. at 151. The institutional integrity of federal courts cannot survive if their orders can be so readily circumvented through tactical forum selection.

Third, the redefinition of settled legal terms like "assigns" [Tr. at 21:45-22:00] threatens the foundational principle that courts "will not write a new contract for the parties." In re Montgomery Ward Holding Corp., 326 F.3d at 387. This judicial revision of established terminology would inject uncertainty into countless existing settlement agreements that rely on traditional legal definitions.

The confluence of these institutional threats—temporal manipulation, logical impossibility, and definitional instability—creates a perfect storm that demands appellate intervention. The integrity of the federal judiciary itself rests on maintaining consistent interpretation of its own orders, preventing tactical manipulation of void instruments, and preserving settled legal terminology. Allowing the current ruling to stand would invite

precisely the type of forum shopping and contradictory positions that the Supreme Court has consistently condemned as threatening "the institutional integrity of the federal courts." University of Tennessee v. Elliott, 478 U.S. at 794.

## D. Bankruptcy Court's Authority to Enforce Its Own Orders

### 1. Statutory Basis

The Bankruptcy Court's authority to enforce its own orders derives from multiple sources:

a) Section 105(a) of the Bankruptcy Code provides that the court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

b) Section 1142(b) authorizes the court to direct any necessary party to "perform any other act" necessary for the consummation of the plan. 11 U.S.C. § 1142(b).

### 2. Case Law Support

Courts have consistently recognized broad enforcement authority:

a) In re Lazy Days' RV Center Inc., 724 F.3d 418, 423 (3d Cir. 2013) (recognizing bankruptcy court's authority to enforce its own orders).

b) In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("It is well established that bankruptcy courts have core jurisdiction to enforce and interpret their own orders.").

The Bankruptcy Court's compromised authority creates a structural constitutional violation that threatens the entire federal-state judicial framework.

## E. The Court Created a Structural Constitutional Violation

The convergence of errors in this case transcends ordinary misinterpretation to present a structural constitutional violation that threatens the foundational relationship between federal and state courts. The violation manifests in three interconnected dimensions that, viewed holistically, reveal why reversal is constitutionally compelled.

### 1. The Constitutional Impossibility

The Settlement Order's voiding provision [D.I. 211-2 ¶ 33] and the State's subsequent enforcement create a constitutional impossibility that exceeds mere procedural error. When the Settlement Order declared the ISAs "void ab initio," it exercised federal power to declare these instruments legally non-existent. See Norton v. Shelby County, 118 U.S. at 442. The State's attempt to enforce these same agreements in state court therefore presents not merely a logical contradiction but a constitutional impossibility: it requires the simultaneous exercise of federal power to void agreements and state power to enforce them.

This impossibility strikes at the heart of the constitutional structure. As the Supreme Court emphasized in Baker v. General Motors Corp., federal court orders command "the respect due final judgments of the federal courts." 522 U.S. at 235. The State's position requires these orders to simultaneously command respect (by accepting the federal benefits) and be disregarded (by enforcing void agreements)—a constitutional paradox that cannot be reconciled with fundamental principles of federal supremacy.

## 2. The Jurisdictional Paradox

The Bankruptcy Court's ruling creates an equally profound jurisdictional paradox. Having retained jurisdiction to interpret and enforce the Settlement Order [D.I. 211-2 ¶ 48], the court simultaneously:

- Declared lack of jurisdiction to interpret without an adversary proceeding [Tr. at 19:30]
- Proceeded to interpret key terms defining released parties [Tr. at 21:45-22:00]
- Allowed state court enforcement of void agreements
- Permitted relitigation of settled federal claims

This paradox fundamentally undermines the constitutional structure of federal jurisdiction. The Third Circuit has emphasized that "the effectiveness of the federal bankruptcy power depends on the ability of bankruptcy courts to enforce their own orders." In re Global Industrial Technologies, 645 F.3d at 206. A court cannot

simultaneously retain jurisdiction, deny its exercise, and permit state court contradiction of its orders without creating a jurisdictional void that the Constitution cannot tolerate.

### 3. The Constitutional Integrity Violation

The most profound constitutional violation emerges from the integration of these elements with the State's tactical manipulation of federal and state forums. The timeline is constitutionally significant:

- Federal Settlement Order entered voiding agreements
- State accepts substantial federal benefits ($4.2 million judgment)
- Six weeks later, State enforces void agreements
- Same counsel represents contradictory positions

This sequence represents more than opportunistic litigation strategy—it constitutes a direct assault on "the practical necessity of preserving the finality of judgments" that the Supreme Court has recognized as constitutionally essential. Travelers Indemnity Co. v. Bailey, 557 U.S. at 151. The State's attempt to derive benefits from federal nullification while simultaneously enforcing the nullified agreements presents exactly the type of manipulation that the Full Faith and Credit Clause was designed to prevent.

The constitutional violation is particularly acute because it threatens the integrity of both federal and state judicial systems. The Third Circuit has consistently emphasized that bankruptcy courts must interpret their orders to "promote finality in bankruptcy

proceedings." In re PWS Holding Corp., 228 F.3d at 236. Allowing a state to tactically undermine federal orders through contradictory state court proceedings would create a constitutional framework where federal judgments are simultaneously final and irrelevant—a structural impossibility that would eviscerate the constitutional design of federal-state judicial relations.

The remedy for this structural constitutional violation is clear: the Bankruptcy Court's interpretation must be reversed to preserve the constitutional framework of federal-state judicial relations. As the Supreme Court has emphasized, the integrity of the federal judiciary rests on maintaining consistent interpretation of its own orders and preventing tactical manipulation that would "pose a direct challenge to the institutional integrity of the federal courts." University of Tennessee v. Elliott, 478 U.S. at 794. Only by enforcing the plain meaning of "assigns" and giving full effect to the Settlement Order's voiding provision can this Court maintain the constitutional structure that ensures the effective functioning of both federal and state courts within our constitutional system.

## IV. PUBLIC POLICY CONSIDERATIONS SUPPORT REVERSAL

### A. Finality of Bankruptcy Settlements

#### 1. Settlement Negotiations

The Bankruptcy Code's emphasis on finality is evident in multiple provisions:

    a.  Section 363(m) protects good faith purchasers from reversal on appeal

    b.  Section 364(e) provides similar protection for post-petition financing

    c.  Section 1144 limits time to revoke confirmation orders

    d.  Section 1127(b) restricts post-confirmation modifications

These provisions demonstrate Congress's intent to promote finality in bankruptcy proceedings. See In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000).

## 2. Third Circuit Precedent on Settlement Finality

The Third Circuit has repeatedly emphasized the importance of finality in bankruptcy settlements:

a) In re Martin, 91 F.3d 389, 394 (3d Cir. 1996) (noting that finality "is essential to the operation of the bankruptcy system")

b) In re Nutraquest, Inc., 434 F.3d 639, 644 (3d Cir. 2006) (emphasizing importance of enforcing settlement agreements to promote finality)

c) In re Kaplan, 143 F.3d 807, 819 (3d Cir. 1998) (discussing how finality serves both debtors and creditors)

## 3. Economic Impact of Uncertainty

The Bankruptcy Court's interpretation creates uncertainty that:

a) Reduces Settlement Value

- Releases become less valuable

- Parties discount settlement offers

- Global settlements become harder to achieve

- Transaction costs increase

b) Impacts Market Efficiency

- Increases cost of capital for distressed companies

- Reduces willingness to engage in workouts

- Creates additional litigation risk

- Impairs reorganization prospects

## B. Enhanced Analysis of Double Recovery

### 1. Constitutional Dimensions

The prohibition against double recovery has constitutional underpinnings:

a) Due Process Clause protects against multiple punishments for same conduct

b) Full Faith and Credit Clause prevents relitigation of settled claims

c) Equal Protection Clause requires similar treatment of similarly situated parties

### 2. Supreme Court Precedent

Multiple Supreme Court decisions support the prohibition against double recovery:

a) EEOC v. Waffle House, Inc., 534 U.S. 279, 297 (2002) (discussing general prohibition against double recovery)

b) Hawaii v. Standard Oil Co., 405 U.S. 251, 264 (1972) (prohibiting double recovery as matter of federal common law)

c) Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 756 (1998) (discussing principle in context of federal remedies)

### 3. Application in Bankruptcy Context

The Third Circuit has specifically addressed double recovery in bankruptcy:

a) In re W.R. Grace & Co., 729 F.3d 332, 345 (3d Cir. 2013) (prohibiting double recovery for same injury)

b) In re Montgomery Ward Holding Corp., 326 F.3d 383, 387 (3d Cir. 2003) (discussing equitable limitations on multiple recoveries)

### C. Double Recovery Issues

The Court's interpretation permits impermissible double recovery by allowing the State to:

1. Obtain federal funds through the Settlement Order

2. Pursue the same claims against Appellant individually

3. Recover twice for the same underlying conduct

4. Circumvent the comprehensive nature of the settlement

This result conflicts with the fundamental principle that "a party is not entitled to be compensated twice for the same injury." See In re W.R. Grace & Co., 729 F.3d 332, 345 (3d Cir. 2013).

## V. THE VOIDING OF ISAs CREATES LEGAL IMPOSSIBILITY

### A. Legal Framework for Void Ab Initio Doctrine

#### 1. Common Law Principles

The void ab initio doctrine has deep roots in common law:

a) "What is void ab initio never had any legal existence or effect." See Norton v. Shelby County, 118 U.S. 425, 442 (1886)

b) "A void contract is no contract at all; it binds no one and is a mere nullity." See Alvin Ltd. v. U.S. Postal Service, 816 F.2d 1562, 1564 (Fed. Cir. 1987)

#### 2. Modern Application

Courts continue to recognize that void ab initio means:

a. The instrument never legally existed

b. No rights can flow from it

c. No obligations were created

d. No liability can arise from it

See In re Marriage of Dagmar & Wojceich G., 128 N.E.3d 380, 387 (Ill. App. Ct. 2019).

## B. Impact on State Court Judgment

### 1. Logical Impossibility

The State's position creates a logical impossibility that directly contradicts the void ab initio doctrine:

   a. The ISAs are void ab initio under federal court order

   b. The state court judgment is based on these void agreements

   c. No valid legal basis exists for the judgment

   d. The judgment essentially enforces void contracts

This logical contradiction is precisely what the void ab initio doctrine aims to prevent. As explained in Alvin Ltd. v. U.S. Postal Service, 816 F.2d 1562, 1564 (Fed. Cir. 1987), "A void contract is no contract at all; it binds no one and is a mere nullity." The state court judgment, by attempting to enforce these void contracts, is itself attempting to breathe life into a legal nullity, which is a logical and legal impossibility.

The State's position creates not merely a legal contradiction but a logical impossibility that strikes at the heart of judicial integrity. Through the Settlement Order - which the State itself drafted - all ISAs were declared "void ab initio" [D.I. 211-2 ¶ 33]. The State secured substantial benefits from this position, including a $4.2 million judgment [D.I. 211-2 ¶ 34]. Yet merely six weeks later, the State sought to enforce these

same "void" agreements in state court proceedings against Appellant [King County Superior Court, No. 22-2-08651-3 SEA].

This position defies fundamental logic. An agreement that is void ab initio "never had any legal existence or effect." Norton v. Shelby County, 118 U.S. 425, 442 (1886). The State cannot simultaneously maintain that the ISAs (1) never legally existed for purposes of the federal settlement and (2) had sufficient legal existence to create enforceable obligations in state court. See In re Marriage of Dagmar & Wojceich G., 128 N.E.3d 380, 387 (Ill. App. Ct. 2019) (explaining that void instruments create no rights, obligations, or liabilities).

The timing of the State's reversal - a mere six weeks between positions - eliminates any possibility that changed circumstances or new information prompted the shift. Rather, it reveals a calculated attempt to obtain double recovery by enforcing agreements the State itself had declared void. This tactical maneuvering threatens the integrity of both the bankruptcy process and the judicial system as a whole.

## 2. Supreme Court Precedent on Void Judgments

The Supreme Court has consistently held that judgments based on void instruments are themselves void and unenforceable:

a) Williams v. North Carolina, 325 U.S. 226, 229 (1945) (void decree cannot create valid obligations)

b) Ex parte Rowland, 104 U.S. 604, 612 (1881) (judgment based on void instrument is itself void)

These precedents underscore the principle that a judgment cannot derive validity from an underlying void instrument. The state court judgment, being based on ISAs that are void ab initio, falls squarely within this established doctrine.

Furthermore, in Norton v. Shelby County, 118 U.S. 425, 442 (1886), the Court emphatically stated that "What is void ab initio never had any legal existence or effect." This principle directly applies to the ISAs in question and, by extension, to the state court judgment based upon them.

The logical impossibility created by the State's position is further illuminated by more recent applications of the void ab initio doctrine. In In re Marriage of Dagmar & Wojceich G., 128 N.E.3d 380, 387 (Ill. App. Ct. 2019), the court reaffirmed that when an instrument is void ab initio:

1. The instrument never legally existed

2. No rights can flow from it

3. No obligations were created

4. No liability can arise from it

Applying these principles to the current case, it becomes clear that:

1. The ISAs never legally existed

2. No rights could have flowed from these void agreements

3. No obligations were created by these null contracts

4. No liability could have arisen from these legal nullities

Therefore, the state court judgment, which purports to enforce rights, obligations, and liabilities stemming from these void ab initio agreements, is itself logically and legally untenable. It attempts to give effect to instruments that, in the eyes of the law, never existed in the first place.

This analysis demonstrates that allowing the state court judgment to stand would not only contradict established legal doctrine but would also create an irreconcilable logical paradox within the legal system. Such a result would undermine the fundamental principles of contract law and judicial integrity that the void ab initio doctrine is designed to protect.These precedents underscore the principle that a judgment cannot derive validity from an underlying void instrument. The state court judgment, being based on ISAs that are void ab initio, falls squarely within this established doctrine.

## VI. JUDICIAL ESTOPPEL AND EQUITABLE PRINCIPLES

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

### A. Elements of Judicial Estoppel

### 1. Supreme Court Framework

In New Hampshire v. Maine, 532 U.S. 742 (2001), the Supreme Court established the definitive framework for judicial estoppel:

a) Clearly Inconsistent Positions

- Must be factually incompatible
- Cannot be result of mistake or inadvertence
- Must relate to same transaction or subject matter

b) Success in Prior Position

- Party must have prevailed on earlier position
- Court must have accepted position
- Partial success is sufficient

c) Unfair Advantage

- Party would derive unfair advantage
- Integrity of judicial process threatened
- Public interest implicated

### 2. Third Circuit's Application

The Third Circuit has refined this analysis in the bankruptcy context:

a) In re Kane, 628 F.3d 631, 638 (3d Cir. 2010) (applying judicial estoppel to prevent abuse of judicial process)

b) Montrose Medical Group v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001) (discussing standards for judicial estoppel in Third Circuit)

c) Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir. 1996) (analyzing preclusive effect of positions taken in bankruptcy)

## B. The State's Inconsistent Positions in Detail

### 1. Drafting Inconsistencies

The State's positions regarding the Settlement Order are internally inconsistent:

a) Release Language

- Drafted broad release including "assigns"
- Now claims narrow interpretation
- Contradicts own drafting choices
- Violates contra proferentem doctrine

b) Definition Choices

- Chose inclusive definition of "Prehired Defendants"
- Could have excluded individual liability
- Failed to limit scope of "assigns"

- Now seeks to rewrite terms

**2. Litigation Conduct**

The State's litigation positions demonstrate clear inconsistencies:

a) Bankruptcy Court

- Argued for comprehensive settlement

- Sought access to federal funds

- Represented release as complete

- Obtained approval based on representations

b) State Court

- Claimed actions were "through Prehired"

- Based individual liability on corporate conduct

- Used void agreements as basis

- Pursued duplicative recovery already released and settled under the Order

## VII. BANKRUPTCY COURT'S JURISDICTION AND AUTHORITY

### A. Statutory Framework for Enforcement

**1. Core Provisions**

Multiple provisions support the court's enforcement authority:

a) 28 U.S.C. § 157(b)(2)(L)

- Confirmations of plans
- Modifications of plans
- Implementation of orders

b) 11 U.S.C. § 105(a)

- All necessary or appropriate orders
- Enforcement authority
- Implementation power
- Prevents abuse of process
- **2.** Supporting Provisions

Additional statutory support includes:

a) 28 U.S.C. § 1334(e)

- Exclusive jurisdiction over property
- Control over estate assets
- Authority over settlements
- Enforcement powers

b) 28 U.S.C. § 157(b)(1)

- Core proceeding authority

- Implementation power

- Enforcement jurisdiction

- Final order authority

## B. Constitutional Authority

**1.** Article III Powers

The Supreme Court has clarified bankruptcy courts' constitutional authority:

a) Stern v. Marshall, 564 U.S. 462 (2011)

- Core vs. non-core proceedings

- Constitutional limitations

- Enforcement authority

- Settlement approval power

b) Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665 (2015)

- Consent principles

- Article III requirements

- Bankruptcy court authority

- Settlement enforcement power

**2.** Specific Enforcement Authority

Courts have consistently recognized bankruptcy courts' power to:

a) Enforce Their Own Orders

- Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934)

- In re Continental Airlines, 236 B.R. 318, 326 (Bankr. D. Del. 1999)

- In re Continental Airlines, 203 F.3d 203 (3d Cir. 2000)

- In re Lazy Days' RV Center Inc., 724 F.3d 418, 423 (3d Cir. 2013)

b) Interpret Settlement Terms

- In re Martin, 91 F.3d 389, 394 (3d Cir. 1996)

- In re Resorts Int'l, Inc., 372 F.3d 154, 168-69 (3d Cir. 2004)

- In re PWS Holding Corp., 228 F.3d 224, 236 (3d Cir. 2000)

## VIII. REMEDIES AND RELIEF

### A. Authority for Requested Relief

1. Courts have inherent authority to interpret their own orders. See In re Lazy Days' RV Center Inc., 724 F.3d 418, 421 (3d Cir. 2013)

2. 11 U.S.C. § 105(a) grants power to issue orders necessary to carry out and enforce prior orders

3. Bankruptcy courts retain jurisdiction to interpret and enforce their own prior orders. See In re Allegheny Health Educ. & Research Found., 383 F.3d 169, 175-76 (3d Cir. 2004)

4.   Courts have "inherent power to enforce compliance with their lawful orders." <u>See</u> Spallone v. United States, 493 U.S. 265, 276 (1990)

5.   Courts must interpret their orders to give effect to their intended purpose. <u>See</u> In re Pittsburgh Lead Works, Inc., 520 B.R. 184, 193 (Bankr. W.D. Pa. 2014)

6.   The Settlement Order explicitly retains jurisdiction to interpret and enforce its terms.

## **B. Interpretation Requested**

The Court should interpret the Settlement Order to clarify:

1.  **Plain Meaning Interpretation**

    **a.**  The ordinary meaning of "assigns" in the release provisions

    **b.**  Whether assumption of liabilities is required for assign status

    **c.**  Application to parties acting on behalf of Prehired

    **d.**  The scope of released conduct and parties

2.  **Application of Contra Proferentem**

    a.  How ambiguities in the Settlement Order should be construed

    b.  The effect of the State's drafting role on interpretation

    c.  Whether the State's failure to exclude assignees affects interpretation

    d.  The impact on terms the State now disputes

3.  **Judicial Estoppel Implications**

    a.  How the State's prior positions affect interpretation

    b.  Whether inconsistent positions influence release scope

   c. The effect on interpreting coverage of assigns

   d. Impact on interpretation of claims against Appellant

4. **Constitutional Interpretation Requirements**

   a. How Full Faith and Credit principles guide interpretation

   b. The proper interpretation to maintain federal supremacy

   c. Whether interpretation must preserve preclusive effect

   d. How to interpret to maintain constitutional compliance

5. **Effect of ISA Voiding Provision**

   a. The legal implications of voiding ISAs ab initio

   b. The scope of claims affected by this provision

   c. How the void status affects interpretation of liability

   d. Interaction with release provisions

## C. Impact of Requested Interpretation

### 1. Settlement Integrity

   a. Ensures consistent interpretation principle

   b. Maintains parties' reasonable expectations

   c. Preserves settlement finality

   d. Supports efficient administration

### 2. Systemic Protection

   a. Promotes predictable interpretation standards

b. Maintains bankruptcy process integrity

c. Ensures proper order enforcement

d. Upholds constitutional requirements

## D. Prayer for Relief

WHEREFORE, Appellant respectfully requests that this Court:

## 1. INTERPRET the Settlement Order to clarify:

a. The plain meaning and scope of "assigns" in the release provisions

a. The application of contra proferentem to disputed terms

b. The effect of the State's prior positions on interpretation

c. The proper interpretation under Full Faith and Credit principles

d. The implications of voiding ISAs ab initio

## 2. PROVIDE guidance on:

a. The proper interpretive principles to apply

b. How judicial estoppel affects interpretation

c. The constitutional requirements for interpretation

d. The intended scope of the release provisions

## 3. CLARIFY how the Settlement Order should be interpreted to:

a. Give effect to plain meaning

    b. Address ambiguities properly

    c. Maintain consistency with prior positions

    d. Preserve constitutional compliance

**4. GRANT such other relief as this Court deems just and proper within its authority to interpret its own orders.**

Respectfully submitted on January 6, 2025.

By: /s/ Joshua Jordan
Joshua Jordan, admitted pro se
6650 Rivers Ave, STE 100
Charleston, SC, 29406
Tel: 843.790.3989
joshlegalstuff@gmail.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because it contains 12,529 words, excluding the parts exempted by Rule 8015(g).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Google Docs in 14-point Times New Roman.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se.

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, a true and correct copy of this document is being filed to the Clerk of the United States Bankruptcy Court for the District of Delaware for filing. Upon filing, the Clerk will serve the document via the Court's CM/ECF system upon all registered participants as identified on the Notice of Electronic Filing (NEF) and in accordance with the applicable service requirements.

By: /s/ Joshua Jordan

Joshua Jordan, Pro Se