IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PREHIRED, LLC., et al.,<br><br>     Debtors. | Chapter 7<br><br>Case No. 22-11007 (JTD)<br>(Bankr. D. Del.) |
| JOSHUA JORDAN,<br><br>     Appellant,<br><br> v.<br><br>STATE OF WASHINGTON, et al.,<br><br>     Appellees. | C.A. No. 24-1181 (MN) |

**<u>MEMORANDUM OPINION</u>**


Joshua Jordan – Pro se appellant.


Nicholas W. Brown, Attorney General, Madeline Davis Rigby, Julia K. Doyle, WASHINGTON STATE OFFICE OF THE ATTORNEY GENERAL, Seattle, Washington; Ericka F. Johnson, Emily L. Skaug, BAYARD, P.A., Wilmington, Delaware – Counsel to appellee, the State of Washington.


September 17, 2025
Wilmington, Delaware

*Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arises in the chapter 7 cases of debtor Prehired LLC ("Prehired"), Prehired Recruiting, LLC, and Prehired Accelerator, LLC (together, "the Prehired Entities" or "the Debtors"). The bankruptcy filing was preceded by the State of Washington's filing of a consumer protection action ("the State Court Action") against the Prehired Entities and their CEO and sole owner, pro se appellant Joshua Jordan ("Appellant") in Washington State Superior Court ("the State Court").

During the bankruptcy cases, the Consumer Financial Protection Bureau ("the CFBP") and ten other states filed a complaint (A184–A217)[1] initiating an adversary proceeding ("the Adversary Proceeding")[2] against the Prehired Entities, which was later resolved by a stipulated judgment. Appellant was not a party to the Adversary Proceeding or the stipulated judgment.

Following the entry of the stipulated judgment, the State of Washington dismissed the Prehired Entities from the State Court Action and proceeded with its case against Appellant individually. On April 12, 2024, the State Court entered a final judgment ("State Court Judgment") against Appellant, holding that Appellant was personally liable for his own conduct in violation of the Washington Consumer Protection Act and other state laws.

Despite having never raised this defense in the State Court Action, Appellant subsequently filed a motion in the Bankruptcy Court seeking declaratory and injunctive relief on the basis that he was a released party under the stipulated judgment by virtue of an undisclosed assignment that he executed on behalf of the Prehired Entities a few months prior to the bankruptcy. Following briefing and oral argument held on September 17, 2024 (A090–A126) ("9/17/24 Tr."), the Bankruptcy Court

---

[1] The docket of the chapter 7 cases, caption *In re Prehired LLC*, No. 22-11007 (JTD) (Bankr. D. Del.) I cited as "Bankr. D.I. __." The appendix (D.I. 18) filed in support of the State of Washington's answering brief, is cited herein as "A__."

[2] The Adversary Proceeding is captioned *State of Washington v. Prehired, LLC, et al.*, Adv. No. 23-50438 (JTD) (Bankr. D. Del.).

1

issued an order (Bankr. D.I. 230; A218) ("the Order") denying Appellant's motion for the reasons stated on the record at the hearing (9/17/24 Tr. at 34:8-36:17) ("the Bench Ruling"). For the reasons set forth herein, the Order will be affirmed.

I.  BACKGROUND

   A.  The Debtors, the State Court Action, and the Assignment

Prior to the bankruptcy, Appellant was sole owner and CEO of the Prehired Entities. On June 8, 2022, the State of Washington filed the State Court Action[3] against the Prehired Entities and Appellant for violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 ("CPA") and other state laws. On September 29, 2022, the Prehired Entities filed chapter 11 petitions in the Bankruptcy Court. Appellant signed the petitions as the Debtors' sole authorized representative. (*See* A142–A146). On November 22, 2022, the Bankruptcy Court granted the Prehired Entities' motion to convert the chapter 11 cases to cases under chapter 7 after the bankruptcy estate became administratively insolvent. Don A. Beskrone was appointed as the chapter 7 trustee the same day.

Appellant later claimed that on June 25, 2022 – three months prior to filing the Prehired Entities' bankruptcy cases – he caused Prehired to execute an assignment ("the Assignment"), purporting to assign to Appellant any monetary claims Prehired may have had against its own counsel and against the State of Washington. (*See* A042 (assignment by Prehired of "all its right, title, and interest in all monies, payments, claims, actions, causes of action, demands and damages related to [Warren Law Group], the [Directors and Officers insurance policy dated September 30, 2021], and the [State of Washington], both known or unknown, past, present, and future" for "in exchange for the amount of $25,000.")). It is undisputed that Appellant did not disclose the

---

[3]  *State of Washington v. Prehired, LLC*, Case No. 22-2-08651-3 SEA (Wash. Superior Ct.).

Assignment to the Bankruptcy Court. (*See* A147–A160). The Statement of Financial Affairs specifically required Appellant, as the Debtors' authorized representative, to disclose all transfers by the Debtors that occurred within the previous two years. (*See* A152). Despite the fact that the Assignment was purportedly executed only three months before the Prehired Entities' bankruptcy filing, and the fact that disclosure of any such transfer or assignment was legally required in the Debtors' Statement of Financial Affairs, there is no reference to the Assignment in the Prehired Entities' Statement of Financial Affairs, chapter 11 petitions, or first day motions, nor is it included in the Appellant's sworn declaration in support of the bankruptcy filing. (*See* A161–A183). Appellant later admitted that he did not disclose the Assignment during the bankruptcy because no one asked him about it. (9/17/24 Tr. at 8:22–9:17).

  B.  <u>**The Adversary Proceeding and the Stipulated Judgment**</u>

On July 13, 2023, the State of Washington joined the CFPB and ten other states (together, "the Plaintiffs") in filing a complaint (A184-A217) ("the Adversary Complaint") initiating the Adversary Proceeding against the Prehired Entities (as referred to therein, "the Prehired Defendants"). The Adversary Proceeding sought injunctive and monetary relief pursuant to federal law, including the Consumer Financial Protection Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act in connection with the Debtors' unlawful practices in originating, servicing, collecting, and enforcing Income Sharing Agreements ("ISAs").[4] (*See id.*). The Adversary Complaint alleged that "Defendant Prehired operated a private, for-profit vocational training program which did business with consumers in an unfair and deceptive manner." (*Id.* ¶ 1). "Prehired advertised that its program would train consumers for a "6-figure" career in software

---

[4]  Although the facts giving rise to the Adversary Proceeding overlapped misconduct alleged in the State Court Action, the latter sought different relief than was sought in the Adversary Proceeding, including consumer restitution outside of the ambit of the Stipulated Judgment.

3

sales." (*Id*. ¶ 2). "The price of Prehired's program varied over time. In 2018, Prehired's stated price was approximately $2,500. By 2019, Prehired's stated cash price had increased to $15,000." (*Id*. ¶ 3). "Prehired encouraged consumers who could not afford this sum to finance its training program via an "Income Share Agreement" (ISA), a type of student loan." (*Id*. ¶ 4).

> Depending on the year offered, Prehired's ISAs required consumers to make minimum payments equal to between 12.5% and 16% of their gross income for 4 to 8 years or until they have paid a total of $30,000, whichever came first. Thus, in 2019, consumers with an ISA were required to pay up to double the $15,000 cash price. Prehired failed to advise consumers about the cost of these loans, and deceptively represented that the ISAs are not loans and did not create debt. Prehired also represented that consumers would pay nothing until they got a job and "partner[ed] with" Prehired in their career. However, Prehired required consumers to pay even if they never obtained a job that Prehired purported to train them for, and, in many cases, calculated minimum monthly payments based on projected rather than actual income.

(*Id*. ¶ 5). Finally, the Adversary Complaint alleged that "Defendant Prehired transferred ownership of many of these financing agreements to other entities, including Defendants Prehired Recruiting and Prehired Accelerator (collectively, "the Debt Collector Defendants"). The Debt Collector Defendants demanded and collected payments, pursued debt collection actions by filing in a distant and not appropriately disclosed forum, and misled consumers into signing settlement agreements that had little benefit for consumers." (*Id*. ¶ 6). Appellant's individual conduct was not alleged in the Adversary Complaint.

On November 20, 2023, the Adversary Proceeding was resolved through a Stipulated Judgment. (A071-A089). The parties to the Stipulated Judgment were the Plaintiffs and the Trustee, on behalf of the Prehired Defendants. According to the Stipulated Judgment, "[t]he Trustee enters this Stipulation to resolve the claims against the Prehired Defendants," and the Plaintiffs "release and discharge the Prehired Defendants from all potential liability for law violations that [Plaintiffs] has or might have alleged in the Complaint . . ." (*Id*. ¶¶ 10, 47). The Prehired Defendants agreed

4

to cease business activities, protect customer information, cancel the fraudulent ISAs, and further consented to the entry of a $4,248,249.30 judgment against them. In exchange, the Prehired Defendants received the release. Appellant was neither a party to the Adversary Proceeding nor the Stipulated Judgment.

### C. The State Court Judgment

As noted above, following entry of the Stipulated Judgment, the State of Washington dismissed the Prehired Entities from the State Court Action and proceeded with its case against Appellant individually based on his own conduct in violation of the CPA and other state laws. (A022-A023). Under Washington law, a corporate officer is individually liable for violations of the CPA if he or she "participate[d] in the wrongful conduct, or with knowledge approved of the conduct." *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wash. 2d 298, 322 (1973).

On January 16, 2024, the State Court granted the State of Washington's motion for partial summary judgment against Appellant. (A025-A032). The State Court found Appellant individually and personally liable for violations of Washington's Consumer Protection Act, Wash. Rev. Code § 19.86, Private Vocational Schools Act, Wash. Rev. Code § 28C.10, and Collection Agency Act, Wash. Rev. Code § 19.16, for operating an unlicensed private vocational school, misrepresenting to students that its tuition financing agreements were not loans, and trying to enforce those unenforceable contracts without a collection agency license, among other things. (*See id.*).

As Appellant has conceded, it was not until February 2024 when his attorney in the State Court Action mentioned the Assignment for the first time in an email to counsel for the State of Washington seeking a trial continuance following the partial summary judgment ruling. (A049A050). In response, counsel for the State of Washington explained that Appellant's liability was personal and based on his individual conduct. (*Id.*). It is undisputed that counsel for Appellant never raised this issue before the State Court.

5

On April 12, 2024, the State Court entered the final State Court Judgment against Appellant and in favor of the State of Washington, including costs and fees, consumer restitution, and civil penalties, in the total amount of $1,435,546.28. (A034–A039). Among other things, the State Court held that "[Appellant] participated in, and knowingly approved of, Prehired's unfair and deceptive acts and practices in violation of the CPA, and he is personally liable for every violation." (A036).

### D. The Motion, Bench Ruling, and Order

On June 28, 2024, Appellant filed the Motion to Enforce the Final Judgment and Order, for Declaratory Judgment, Injunctive Relief, Contempt Sanctions, and for Damages, Legal Fees, and Expenses (A001–A070) ("the Motion") in the Bankruptcy Court, alleging that he was released under the Stipulated Judgment. Appellant sought an order: (1) enforcing the Stipulated Judgment as to the State of Washington; (2) declaring Appellant is a released party under the Stipulated Judgment, (3) granting injunctive relief to prevent the State of Washington from pursuing any further claims against Appellant; (4) finding the State of Washington in contempt and awarding sanctions for violating Stipulated Judgment; and (5) awarding Appellant damages, legal fees, and expenses. (A003). Briefing followed, and in his reply in support of his Motion, Appellant stated that he was abandoning his request for declaratory relief. (A223–A224). On September 17, 2024, the Bankruptcy Court held a hearing to consider the Motion. At oral argument, Appellant clarified that he still wanted the Bankruptcy Court to find that the State of Washington had violated the Stipulated Judgment and to compel the State of Washington to take action to "undo" the State Court Judgment against him, including "instruct[ing] the State of Washington . . . to vacate the judgment because it was obtained improperly. You can't order that court to vacate it, but you can order that Washington State . . . go and undo what they've done illegally." (9/17/24 Tr. at 14:17–15:20).

Following argument, the Bankruptcy Court issued the Bench Ruling denying the Motion. The Bankruptcy Court held that the Motion was "procedurally invalid," as the type of relief

6

Appellant sought by the Motion—"compel[ling the State of Washington] to take action in Washington state court to undo" the State Court Judgment—would amount to a mandatory injunction, which requires an adversary proceeding. (*Id*. at 15:16–18 & 34:19–35:2). The Bankruptcy Court further concluded that, even if it could reach the merits of the Motion, Appellant was not entitled to relief because he is not a released party under the Stipulated Judgment, as Prehired's prepetition assignment of certain monetary claims did not make Appellant a "successor and assign" of Prehired for purposes of the Stipulated Judgment's release provisions. (*Id.* at 35:11–21). Moreover, even if Appellant were a "successor and assign" of the Debtors' liabilities, the Stipulated Judgment still would not release Appellant's individual and personal liability, based on his own participation in or knowing approval of the wrongful conduct. (*Id.* at 35:22–36:6). On October 11, 2024, the Bankruptcy Court issued the Order consistent with its Bench Ruling.

### E. The Appeal

On October 22, 2024, Appellant filed a timely notice of appeal. (D.I. 1). On March 7, 2025, the appeal was fully briefed. (D.I. 15, 17, 24). On July 16, 2025, Appellant filed a motion to expedite, asserting that the ensuing four months constituted "excessive delay for [a] straightforward legal issue." (D.I. 26 at 1). On September 1, 21025, Appellant filed a Supplemental Motion to Expedite and Clarification of Relief. (D.I. 29). No party requested oral argument; indeed, Appellant stated that oral argument was unnecessary. (D.I. 15 at 2; D.I. 24 at 1).

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). The Order denying Appellant's motion for injunctive and other relief is final and immediately appealable because it "fully and finally resolved a discrete set of issues, leaving no related issues for later determination." *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990). Upon appeal from the Bankruptcy Court to the District Court, the District Court "review[s]

the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 370 (3d Cir. 2022) (quoting *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020)).

## III.   ANALYSIS

### A.   The Motion Was Properly Denied as Procedurally Improper

The Bankruptcy Court properly denied the Motion as procedurally improper because it sought relief that the Bankruptcy Court may not grant by motion. (*See* Bench Ruling at 34:20–35:2). As the Bankruptcy Court correctly held, the type of relief sought in the Motion—an order compelling the State of Washington to act to "undo" the State Court Judgment—is "a mandatory injunction" that "requires an adversary proceeding." Fed. R. Bankr. P. 7001(g) (listing adversary proceedings as including "a proceeding to obtain an injunction or other equitable relief . . ."). The additional relief sought by the Motion (declaratory judgment, damages) also may only be obtained through adversary proceedings. Fed. R. Bankr. P. 7001(g), (i).

Appellant states that he has "withdrawn all requests for relief that would require an adversary proceeding," apparently conceding that his Motion was properly denied on those grounds, and that all he seeks is "interpretation and enforcement of the [Stipulated Judgment]," which "falls squarely within the bankruptcy court's inherent authority through motion practice." (D.I. 24 at 6; *see also* D.I. 15 at 10). Needless to say, the Bankruptcy Court has authority to interpret and enforce its prior orders. This was not the relief Appellant requested. During oral argument, Appellant confirmed that he sought an order compelling the State of Washington to act to "undo" the State Court Judgment, which is a mandatory injunction. (*See* A103-A104 at 14:17–15:20). The Bankruptcy Court correctly concluded that Appellant's Motion was procedurally deficient as this and other requested relief could not be granted upon a motion. (*See* A123–A124 at 34:8-35:2). That Appellant now would be satisfied with some other form of relief is irrelevant to the appeal.

8

The Court agrees with the State of Washington that even if Appellant had pursued his desired relief through an adversary proceeding, such relief would be barred by the *Rooker-Feldman* doctrine. Under *Rooker-Feldman*, a federal claim is barred "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (quoting *Walker v. Horn*, 385 F.3d 321, 329 (3d Cir. 2004)).

> A federal claim is inextricably intertwined with an issue adjudicated by a state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment . . . In other words, *Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.

*Knapper*, 407 F.3d at 581 (quoting *Horn*, 385 F.3d at 330). Here, as in *Knapper*, Appellant seeks a determination that the State Court Judgment was improperly entered. Appellant argues he was released from Washington's claims before the State Court Judgment was entered, yet he has never raised this very fundamental issue in any of the proceedings before the State Court. Appellant also never sought to set aside the judgment based on the purported release, *see* Wash. Super. Ct. Civ. R. 60(5), (6), and has not raised this issue in his pending appeal from the State Court Judgment. Instead, Appellant asked the Bankruptcy Court to tell the State Court that he is a released party and that the State Court Judgment is invalid. Under *Rooker-Feldman*, federal district courts should avoid exercising appellate jurisdiction over state court judgments. *See Knapper*, 407 F.3d at 581 (holding that *Rooker-Feldman* doctrine applied to prevent bankruptcy court from exercising subject matter jurisdiction over adversary proceeding brought by Chapter 13 debtor to set aside state foreclosures and sheriff's sales as allegedly having been conducted in violation of debtor's due process rights). The proper forum for Appellant's objections and challenges to the State Court Judgment are Washington's state courts.

### B. Alternatively, Appellant Is Not a Released Party

Appellant's main argument is that he falls within the definition of "assigns" for purposes of being included in the Stipulated Judgment's release. The Bankruptcy Court noted that, even if it could proceed to consider the merits of the Motion, all Appellant had accomplished through the Assignment "was assign the assets to yourself, not the liabilities. That is not what was contemplated by the terms of the release." (Bench Ruling at 35:3-21). On appeal, Appellant argues that the Bankruptcy Court erred in its interpretation of "assigns." (*See* D.I. 15 at 22-33).

The interpretation of contracts is a matter of law for the court to determine. *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del. 1992). A court's interpretation of a contract "will give priority to the parties' intentions as reflected in the four corners of the agreement." *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 1985). "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours and Co. v. Shell Oil Co..,* 498 A.2d 1108, 1113 (Del. 1985) (citations omitted). "[T]he meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." *Id.* If a contract's terms are clear and unambiguous, the court will interpret such terms according to their ordinary and usual meaning. *See Paul v. Deloitte & Touche,* 974 A.2d 140, 145 (Del. 2009). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc,* 616 A.2d at 1195.

Appellant asserts, based on his undisclosed Assignment of monetary claims, that under the Stipulated Judgment, the State of Washington, the CFPB, and ten other states unknowingly released him of all personal liability for his individual unlawful conduct during the time he managed and

10

operated the Prehired Entities. In support of this argument, Appellant relies entirely on the definition of "assigns." Under the Stipulated Judgment, Plaintiffs "release and discharge the Prehired Defendants" from claims arising from conduct alleged in the Adversary Complaint, and "Prehired Defendants" is defined as "Prehired, LLC, Prehired Recruiting, LLC, and Prehired Accelerator, LLC, *and their successors and assigns*." (A079 (emphasis added)). The definition does not include the Prehired's officers, directors, or owners. Appellant argues he is an "assign" under the Stipulated Judgment by virtue of his prepetition purchase of certain claims under the Assignment, and therefore a party covered by the release, or that this provision is at least ambiguous.

The provision cited by Appellant is unambiguous as it is not reasonably or fairly susceptible to different interpretations. Construing the agreement as a whole, the release evidences the parties' intent to release the "Prehired Defendants" and their "successors and assigns" from future claims arising out of the Prehired Defendants' alleged conduct. A successor is one who "replaces or follows a predecessor" or "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Newell v. LendVia, LLC*, 2025 WL 2380706, at *3 (E.D. Pa. Aug. 15, 2025) (quoting Black's Law Dictionary (12th ed. 2024)). And an assignee is "[s]omeone to whom property rights or powers are transferred by another." *Id.* Taken together, the clause shows the parties' intent to ensure continuity in the contractual relationship, not to reach beyond it. Nothing in the record suggests that Appellant possesses rights, duties or powers previously possessed by the Prehired Entities or that he somehow succeeded to their interests and responsibilities. Appellant's interpretation of the term "assigns" is inconsistent with the common meaning of that term in the context of settlement agreements such as this one.

Appellant's interpretation of "assigns" is also illogical. The Assignment Appellant relies upon assigned interest in money and potential *claims* by Prehired against others. (*See* A042 ¶ 1

11

(Prehired assigns to Appellant "all its right, title, and interest in all monies, payments, claims, actions, causes of action, demands and damages related to [Warren Law Group], the [Directors and Officers insurance policy dated September 30, 2021], and [Washington], both known or unknown, past, present, and future (the 'Claim')."). Although Appellant is an assignee of certain *claims*, those claims are unrelated to Prehired's *liabilities* for conduct at issue in the Adversary Proceeding—the subject of Stipulated Judgment. The Stipulated Judgment releases the Prehired Entities (and their successors and assigns) "from all potential *liability* for law violations that [Plaintiffs have] or might have alleged in the Complaint." (*See* A085) (emphasis added). Appellant is not an assignee of any of the Prehired Entities' liabilities. Indeed, the Assignment upon which Appellant relies *expressly excludes Prehired's liabilities*. (*Id*. ("This assignment [from Prehired] excludes all obligations and liabilities associated with the Claim because it is an assignment without assumption of liabilities.")). Given this, the release in the Stipulated Judgment could not apply to Appellant because he was never assigned any Prehired liability for the conduct at issue in the Adversary Proceeding.

Appellant's interpretation of "assigns" is also impracticable as it would mean that any person or entity that ever received any assignment by the Debtors is also released from any claims by the CFPB and eleven different states. "Such inference runs counter to the [Stipulated Judgment]'s overall plan or scheme." *E.I. du Pont de Nemours,* 498 A.2d at 1113. The overall plan or scheme of an agreed final judgment such as this one, where defendants consent to a money judgment against them in exchange for a release, is to end certain litigation—*i.e.*, "to settle and resolve all matters in this dispute." (A073). It cannot be, as Appellant asserts, that any person or entity that ever received any assignments from the Prehired Defendants are also released, as it would be impossible to ascertain the identities of such purported releasees, or the nature of the released claims against them at the time of agreement. Appellant's argument as to the meaning of "assigns" should not control the meaning of the entire agreement where it runs counter to the overall point of a final judgment.

12

Finally, even if the Court were to accept Appellant's interpretation of the Assignment and the Stipulated Judgment as releasing undisclosed, prepetition assignees, his arguments still fail. The State Court entered judgment against him in his personal, individual capacity, which is not derivative of Prehired's liability, which is, again, the subject of the Stipulated Judgment. (*See* A034-A039). Appellant misunderstands this important distinction. Under Washington law, individuals, including corporate officers, may be held personally liable for conduct that violates the CPA if they "participate[d] in" or "with knowledge approve[d] of" the practice that violates the CPA. *State v. Ralph Williams' N.W. Chrysler Plymouth*, 87 Wash. 2d at 322. This type of liability is different from liability that might attach through piercing the corporate veil, which makes corporate principals personally liable for debts incurred by the corporation. Under the CPA, liability attaches directly to the principal because of their own acts, in addition to and separate from the corporation's liability. *See e.g.*, *Grayson v. Nordic Constr. Co.*, 92 Wash. 2d 548, 553-54, 599 P.2d 1271, 1274 (1979) ("personal liability" for CPA violations was "properly imposed" on corporate officer who personally directed mailing of deceptive advertising; explaining that a corporate officer is liable under the CPA if he or she "participates in wrongful conduct or with knowledge approves of the conduct"); *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 535, 441 P.3d 1203, 1237 (2019) (business owner individually liable for personally participating in CPA violations as "[l]iability for such participation or approval does not depend on piercing the corporate veil"), *cert. denied*, 141 S.Ct. 2884 (2021), *petition for rehearing dismissed*, 142 S.Ct. 521 (2021).

The State Court found Appellant individually and directly liable for his personal participation in and knowing approval of unlawful acts. (*See* A036 ("Jordan participated in, and knowingly approved of, Prehired's unfair and deceptive acts and practices in violation of the CPA, and he is personally liable for every violation."); A032 ("IT IS FURTHER ORDERED that Jordan is personally liable for each and every violation of the CPA described above.")). Although the

13

Stipulated Judgment releases Prehired Entities (and their successors and assigns) from further actions arising from their alleged conduct, it does not absolve Appellant of personal liability for his own conduct.

### C. Appellant's Remaining Arguments Fail

Appellant's brief identifies multiple issues that are not relevant to the Bankruptcy Court's Bench Ruling and Order because those arguments incorrectly presume that Motion was procedurally viable and that his interpretation of the release in the Stipulated Judgment was valid.

Appellant argues that "by making substantive determinations while ostensibly denying the motion on procedural grounds," the Bankruptcy Court: (1) exceeded its stated jurisdictional basis, (2) deprived Appellant of proper procedural protections, (3) created confusion about the precedential effect of its rulings, and (4) complicated the appeal process. (D.I. 15 at 37). Appellant cites no case law in support, and this argument is without merit. The Bankruptcy Court made clear that it could not proceed to consider the merits of the Motion. (*See* Bench Ruling at 35:3-4). The Bankruptcy Court went on to explain why Appellant would not prevail on his arguments even if the merits could be reached. There is nothing improper about the Bankruptcy Court offering this explanation, especially where Appellant had lamented throughout the hearing that he was struggling to represent himself pro se and understand the proceedings. (*See id.* at 12:18–21; 13:5–8; 13:15–18; 14:6–9; 33:19–20). Even reading the Bankruptcy Court's remarks as a ruling in the alternative, offering such a ruling is not inappropriate. *See e.g., In re Nuverra Environmental Solutions*, 590 B.R. 75, 79 (D. Del. 2025) (providing ruling in the alternative); *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 322 n.16 (D.N.J. 2009) (same).

Appellant also contends that the Bankruptcy Court failed to construe ambiguities in the Stipulated Judgment against the drafter – which he presumably believes was the State of Washington. The doctrine Appellant references, however, would only apply if the release

14

provisions in the Stipulated Judgment were ambiguous, which they are not. "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc*, 616 A.2d at 1106. Here, none of the parties to the Stipulated Agreement considered the release provisions to be ambiguous. (*See* 9/21/24 Tr. at 22:21-24:9 (position of counsel to Chapter 7 Trustee that Appellant has conflated the term assigns with assignee); *see also* Bench Ruling at 35:10-21)). That non-party Appellant disagrees with the parties' construction does not render the Stipulated Judgment ambiguous.

Appellant further argues that this Court must consider the question of whether the Bankruptcy Court's Bench Ruling and Order violated the U.S. Constitution "by allowing state courts to disregard a federal court order . . ." (D.I. 15 at 11). Appellant's argument is unclear. Washington properly and timely dismissed the Prehired Entities from the Washington State action after entry of the Stipulated Judgment. No other parties were entitled to dismissal. Appellant never gave the State Court an opportunity to evaluate his arguments because he has never raised them in State Court, where he was represented by counsel. In the absence of a conflict between the Stipulated Judgment and the State Court Judgment, the Court need not reach this issue.

Appellant further contends that the Bankruptcy Court erred in "failing to consider how its Order voiding all ISAs *ab initio* affects the basis for liability against Appellant . . ." (D.I. 15 at 11). This argument is also unclear but appears to reflect a misunderstanding of the bases for the State Court Judgment's imposition of individual liability. This Court need not consider the argument, however, because Appellant failed to raise this issue before the Bankruptcy Court. *See, e.g.*, *In re Imerys Talc Am., Inc.*, 38 F.4th at 372 ("An argument is waived where a party fails to 'adequately raise it' with a 'minimum level of thoroughness' in the lower court. And in bankruptcy appeals,

15

avoiding a waiver determination at the district court or appellate court requires a party to have properly brought the argument before the bankruptcy court.") (internal citations omitted).

Finally, Appellant asserts that the Bankruptcy Court erred in failing to consider the doctrine of judicial estoppel. Appellant appears to argue that the State of Washington has taken inconsistent positions because it argued that Appellant acted through Prehired but also argued that Appellant's liability was individual and personal. (*See* A010-A011). There is no inconsistency. As set forth herein, under Washington law, "[i]f a corporate officer participates in the wrongful conduct, or with knowledge approves of the conduct, then the officer, as well as the corporation, is liable . . . Corporate officers cannot use the corporate form to shield themselves from individual liability." *Ralph Williams*, 87 Wash. 2d at 322 (citations omitted). The State of Washington provides the basis for Appellant's personal liability and State Court Judgment against him.

## IV.   CONCLUSION

The Motion was properly denied as procedurally improper. Assuming the Bankruptcy Court could have reached the merits, the Court agrees that the Motion lacked substantive merit and would be properly denied on several alternative grounds. For the reasons set forth herein, the Order is affirmed. An appropriate order will be entered.[5]

---

[5] The State of Washington also raised the doctrine of unclean hands. Appellant admitted that he did not disclose the Assignment during the bankruptcy because no one asked him about it. (9/17/24 Tr. at 8:22-9:17). The Schedule of Financial Affairs required Appellant, as the Debtor's authorized representative, to disclose all transfers that occurred within the previous two years. (*See* A152). As the Bankruptcy Court observed, such transfers may be avoided as preferences or fraudulent conveyances, an issue not reached here. (*See* Bench Ruling at 24:21-23). Despite failing to disclose it, Appellant asks this Court to enforce and grant him relief based upon the Assignment. The State of Washington asserts that the doctrine of unclean hands bars such relief. *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (explaining that the doctrine may bar recovery when "'some unconscionable act of one coming for relief has immediate and necessary relation to the equity that' the party seeks."). As the Motion was properly denied as procedurally improper, the Court does not reach this argument.